1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   PATRICK R. DELAHUNTY (CABN 257439)
    SARAH E. GRISWOLD (CABN 240326)
5   Assistant United States Attorneys

6        150 Almaden Boulevard, Suite 900
         San Jose, California 95113
7        Telephone: (408) 535-5061
         FAX: (408) 535-5081
8        patrick.delahunty@usdoj.gov
         sarah.griswold@usdoj.gov
9
    Attorneys for United States of America
10
                        UNITED STATES DISTRICT COURT
11
                     NORTHERN DISTRICT OF CALIFORNIA
12
                            SAN JOSE DIVISION
13

14  UNITED STATES OF AMERICA,          )   CASE NO. 16-CR-00047 EJD
                                       )
15          Plaintiff,                 )   GOVERNMENT'S MOTIONS IN LIMINE
                                       )
16      v.                             )
                                       )
17  JONATHAN CHANG,                    )
         a/k/a RuWu Charng, and        )
18  GRACE CHANG,                       )
         a/k/a Wei-Lin Chang,          )
19                                     )
            Defendants.                )
20  _____  )

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND……………………………………………………………1

II.   MOTIONS *IN LIMINE*………………………………………………………………..1

    A.  MIL No. 1: The Defendants Cannot Introduce "State of Mind" Testimony from Lay Witnesses……………………………………………………………………1

    B.  MIL No. 2: The Defendants Cannot Elicit Improper Character Evidence………………..3

    C.  MIL No. 3: The Defendants Cannot Introduce Hearsay Unless an Exception to the Hearsay Rule Applies……………………………………………………………..4

    D.  MIL No. 4: The Defendants Cannot Circumvent the Hearsay Rule by Introducing their Own Statements through Other Witnesses……………………………………………4

    E.  MIL No. 5: The Defendants Cannot Introduce "Others Did it Too" Evidence…………..6

    F.  MIL No. 6: The Defendants Cannot Introduce Evidence of the Government's Charging Decisions or Alternative Remedies Available through Other Forums…………………7

    G.  MIL No. 7: The Defendants Cannot Introduce "Blame the Victim" Evidence…………..9

    H.  MIL No. 8: Interstate Nexus Element…………………………………………………11

    I.   MIL No. 9: The Defendants' Tax Returns Can be admitted……………..……………11

    J.   Other Evidentiary Issues………………………………………………………………13

1

# TABLE OF AUTHORITIES

2
*Michelson v. United States*,
  335 U.S. 469 (1948)............................................................................................. 3, 4

3
*Tome v. United States*,
  513 U.S. 150 (1995)................................................................................................. 6

4
*United States v. Allen*,
  88 F.3d 765 (9th Cir. 1996) ................................................................................. 11

5
*United States v. Arias*,
  431 F.3d 1327 (11th Cir. 2005) ............................................................................ 9

6
*United States v. Barrett*,
  153 F. Supp. 3d 552 (E.D.N.Y. 2015) ................................................................ 12

7
*United States v. Behmanshah*,
  49 Fed.Appx 372, fn. 2 (3d Cir. 2002)............................................................... 11

8
*United States v. Bishop*,
  291 F.3d 1100 (9th Cir. 2002) .............................................................................. 2

9
*United States v. Chang Da Liu*,
  538 F.3d 1078 (9th Cir. 2008) .............................................................................. 6

10
*United States v. Ciccone*,
  219 F.3d 1078 (9th Cir. 2000) ............................................................................ 11

11
*United States v. Collicott*,
  92 F.3d 973 (9th Cir. 1996) .............................................................................. 5, 6

12
*United States v. Contra Costa County Water Dist.*,
  678 F.2d 90 (9th Cir. 1982) ................................................................................... 9

13
*United States v. Cox*,
  633 F.2d 871 (9th Cir. 1980) ................................................................................ 3

14
*United States v. Dashner*,
  No. 12-CR-00646-SI-1, 2015 WL 3660331 (N.D. Cal. June 2, 2015)................. 2

15
*United States v. DiStefano*,
  129 F. Supp. 2d 342 (S.D.N.Y. 2001).................................................................. 6

16
*United States v. Dubin*,
  91 F.3d 155 (9th Cir. 1996) ................................................................................ 12

17
*United States v. Fernandez*,
  839 F.2d 639 (9th Cir. 1988) ............................................................................ 4, 6

18
*United States v. Fuchs*,
  218 F.3d 957 (9th Cir. 2000) .............................................................................. 12

19
*United States v. Goldfarb*,
  No. CR07-00260-PHX-DGC, 2012 WL 1831508 (D. Ariz. May 18, 2012)........ 7

20
*United States v. Gomez*,
  772 F. Supp. 2d 1185 (C.D. Cal. 2011) ............................................................... 4

21
*United States v. Goodwin*,
  457 U.S. 368 (1982)................................................................................................ 7

22
*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) .............................................................................. 8

23
*United States v. Hauert*,
  40 F.3d 197 (7th Cir. 1994) ................................................................................... 2

24
*United States v. Jae Shik Cha*,
  97 F.3d 1462 (9th Cir. 1996) .............................................................................. 12

25
*United States v. Kahre*,
  737 F.3d 554 (9th Cir. 2013) ................................................................................ 2

26
*United States v. Kupau*,
  781 F.2d 740 (9th Cir. 1986) ................................................................................ 3

27
*United States v. Ladum*,
  141 F.3d 1328 (9th Cir. 1998) ............................................................................ 11

28
*United States v. Liera-Morales*,
  759 F.3d 1105 (9th Cir. 2014) .............................................................................. 5

*United States v. McCollom*,
   664 F.2d 56 (5th Cir. 1981) ................................................................................. 4

*United States v. Mitchell*,
   502 F.3d 931 (9th Cir. 2007) ............................................................................... 5

*United States v. Monaco*,
   194 F.3d 381 (2d Cir. 1999)………………………………………………….....12

*United States v. Molinaro*,
   11 F.3d 853 (9th Cir. 1993) ............................................................................... 10

*United States v. Moore*,
   923 F.2d 910 (1st Cir. 1991).............................................................................. 10

*United States v. Nakai*,
   413 F.3d 1019 (9th Cir. 2005) ............................................................................. 5

*United States v. Ortega*,
   203 F.3d 675 (9th Cir. 2000) .......................................................................... 4, 5

*United States v. Osarenkhoe*,
   439 F. Appx. 66 (2d Cir. 2011).......................................................................... 12

*United States v. Re*,
   401 F.3d 828 (7th Cir. 2005) ............................................................................... 7

*United States v. Reed*,
   641 F.3d 992 (8th Cir. 2011) ............................................................................... 8

*United States v. Rubio-Estrada*,
   857 F.2d 845 (1st Cir. 1988).............................................................................. 13

*United States v. Saks*,
   964 F.2d 1514 (5th Cir. 1992) ........................................................................... 10

*United States v. Serfling*,
   504 F.3d 672 (7th Cir. 2007) ............................................................................. 10

*United States v. Technic Services, Inc.*,
   314 F.3d 1031 (9th Cir. 2002) ............................................................................. 9

*United States v. Thomas*,
   377 F.3d 232 (2nd Cir. 2004)............................................................................ 10

*United States v. Vallejos*,
   742 F.3d 902 (9th Cir. 2014) ............................................................................... 5

*United States v. Winkle*,
   477 F.3d 407 (6th Cir. 2003) ............................................................................. 10

*Wayte v. United States*,
   470 U.S. 598 (1985).............................................................................................. 7

## Statutes

18 U.S.C. § 1343 ....................................................................................................... 1
18 U.S.C. § 1349 ....................................................................................................... 1
18 U.S.C. § 1956(c)(4) ........................................................................................... 11
18 U.S.C. § 1956(h) .................................................................................................. 1

## Rules

Fed. R. Evid. 106 ...................................................................................................... 5
Fed. R. Evid. 402 .................................................................................................. 7, 8
Fed. R. Evid. 403 ...................................................................................................... 8
Fed. R. Evid. 405(a) ................................................................................................. 4
Fed. R. Evid. 408 ...................................................................................................... 9
Fed. R. Evid. 701 ...................................................................................................... 2
Fed. R. Evid. 801 ...................................................................................................... 4
Fed. R. Evid. 801(c) ............................................................................................. 4, 5

The United States, by and through its attorneys of record, herein moves *in limine* to exclude from the trial the evidence, and related testimony, identified below.

## I.     FACTUAL BACKGROUND

Jonathan and Grace Chang (a married couple) are charged with one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), four counts of wire fraud (18 U.S.C. § 1343), one count of conspiracy to commit money laundering (18 U.S.C. § 1956(h), and three counts of money laundering (concealment, 18 U.S.C. § 1956(a)(1)(B)(i)).  ECF No. 1.

The indictment charged the Changs with a scheme to defraud that involved obtaining money and property by means of materially false and fraudulent representations.  The scheme included representations made to a wealthy businesswoman, C.W., who was the then-employer of Jonathan Chang; employees and agents of C.W.; entities controlled by C.W., and the church to which Jonathan and Grace belonged.  The indictment also alleged that the Changs attempted to conceal the proceeds of their scheme to defraud by transmitting the proceeds to other accounts and other entities they created, including Home of Christ Christian Center ("HOCCC").  *Id.*

As detailed in the indictment, the scheme to defraud centered around the Changs' efforts to obtain money and property by intentionally misleading individuals about the true nature of two entities, Home of Christ Associates Incorporated ("The Inc.") and Home of Christ Associates LLC ("The LLC"). Specifically, the Changs misrepresented to some individuals that The Inc. and The LLC were associated with the church the Changs attended, Home of Christ 4 a/k/a Home of Christ in West San Jose, while at other times, represented that The Inc. and The LLC were associated with C.W.  Neither was true.  The Inc. and The LLC were two entities established and controlled by the Changs and both were used by the Changs for self-enrichment.

## II.     MOTIONS *IN LIMINE*

The facts of this case raise potential evidentiary issues that can be resolved through pre-trial motions *in limine*.

### A.     MIL No. 1: The Defendants Cannot Introduce "State of Mind" Testimony from Lay Witnesses

Rule 701 provides that a lay witness may give an opinion only if it is (a) rationally based on the

witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.

Lay opinions about the defendants' beliefs and state of mind do not meet this test.  Testimony about it would be both speculative and beyond the competence of any witness other than the defendants themselves.  *See United States v. Hauert*, 40 F.3d 197, 201-02 (7th Cir. 1994) (holding, in the context of a tax protester case, that "defendant's beliefs about the propriety of his filing returns and paying taxes, which are closely related to defendant's knowledge about tax laws and defendant's state of mind in protesting his taxpayer status, are ordinarily not a proper subject for lay witness opinion testimony absent careful groundwork and special circumstances not present here."); *accord United States v. Dashner*, No. 12-CR-00646-SI-1, 2015 WL 3660331, at *3 (N.D. Cal. June 2, 2015).  In other words, a jury can judge the defendants' state of mind by itself, and its assessment should not be aided by the conclusions drawn by possibly biased witnesses, such as the defendants' friends and family.

Rule 803(3) does not create an exception, either.  For example, the defendants may seek to elicit testimony from witnesses that purports to show the witnesses' "state of mind" regarding the defendants' statement of mind.  For example, friends and family of the defendants may assert that at or around the time of relevant events, the witnesses had the "state of mind" or impression that the defendants were motivated only by benevolent factors, such as their faith or loyalty to Cher Wang, etc.  In such a situation, the Ninth Circuit's decision in *United States v. Kahre* is instructive.  737 F.3d 554, 577 (9th Cir. 2013).  There, the court considered a district court's exclusion of witness testimony about the defendants' good faith belief regarding their violations of tax law.  *Id.*  The court affirmed exclusion of such testimony, holding witness testimony "about the defendants' state of mind at the time, a subject about which [defendants] could be examined and cross-examined if they took the stand" is inadmissible hearsay.  *Id.* (*citing United States v. Bishop*, 291 F.3d 1100, 1110–11 (9th Cir. 2002)).  As the Ninth Circuit held in a similar case, "a second-hand statement of memory or belief to prove the fact remembered" is "irrelevant hearsay."  *Bishop*, 291 F.3d at 1110-11.

Of course, the government does not intend by this motion to seek exclusion of a percipient witness's knowledge of any facts regarding the defendants' actions, such as whether the defendants

1   directed or instructed others regarding transfers of money, when the transfers occurred, and what the

2   witnesses observed of the defendants' actions, appearances, and behavior.  But once a witness testifies

3   as to relevant and otherwise admissible facts that provide the basis for an after-the-fact opinion (here,

4   the defendants' state of mind during the time period of the offense conduct), there is no reason for the

5   witness to then add an interpretive gloss to those facts by stating the opinion itself.  *See, e.g., United*

6   *States v. Cox,* 633 F.2d 871, 875 (9th Cir. 1980) (The witness's testimony went "beyond the literal

7   meaning of [defendant's] words …themselves" and so "[t]he jury could draw its own conclusions from

8   what the [witness] had already testified.  Her additional analysis was irrelevant and should not have been

9   admitted.").

10          Finally, the anticipated testimony regarding the defendants' state of mind also should be

11   excluded because it will likely be speculative.  There is no proffer as to how any of these witnesses

12   could determine better than the jury what the defendants' state of mind was at various points in time,

13   other than the fact that they knew the defendants or observed them.  That does not make it admissible,

14   however.  A witness's "opinion of [a defendant's] state of mind" constitutes "speculation" that should be

15   excluded under Rule 602.  *United States v. Kupau*, 781 F.2d 740, 745 (9th Cir. 1986).  Thus, these

16   witnesses should be precluded from speculating and opining about the defendants' state of mind.

17          **B.      MIL No. 2: The Defendants Cannot Elicit Improper Character Evidence**

18          The Supreme Court has recognized that character evidence -- particularly cumulative character

19   evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury.  *See*

20   *Michelson v. United States*, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide

21   discretion to limit the presentation of character evidence.  *Id.*  In addition, the form of the proffered evidence

22   must be proper.  Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence

23   may be introduced.  It specifically states that where evidence of a character trait is admissible, proof may be

24   made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, a

25   defendant may not introduce specific instances of his good conduct through the testimony of others.  *See*

26   *Michelson*, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of

27   conduct or his possession of a particular disposition or of benign mental or moral traits.").  On cross-

28   examination of a defendant's character witness, however, the government may inquire into specific

1   instances of a defendant's past conduct relevant to the character trait at issue.  *See* Fed. R. Evid. 405(a).

2   In particular, a defendant's character witnesses may be cross-examined about their knowledge of the

3   defendant's past crimes, wrongful acts, and arrests.  *See Michelson*, 335 U.S. at 481.  The only

4   prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the

5   character trait at issue.  *See United States v. McCollom*, 664 F.2d 56, 58 (5th Cir. 1981).  The

6   government requests an order that prohibits the introduction of improper character evidence.

7         **C.**     **MIL No. 3: The Defendants Cannot Introduce Hearsay Unless an Exception to the Hearsay Rule Applies**

8

9        Nearly every exhibit in the defendants' exhibit list is inadmissible hearsay.  Most are emails.  As

10   a result, the exhibits consist of documents reflecting out-of-court statements by witnesses offered for

11   their truth, and they accordingly fall within the definition of hearsay in Fed. R. Evid. 801.  As a result,

12   they must be excluded pursuant to Rule 802, unless they fall within an exception identified in Rule 803.

13         **D.**     **MIL No. 4: The Defendants Cannot Circumvent the Hearsay Rule by Introducing their Own Statements through Other Witnesses**

14

15        The defendants may seek to introduce their own statements through witnesses other than themselves.

16   This is particularly likely given the scope of the defendants' exhibit list when compared to their witness list,

17   which does not include either defendant.  However, it is well settled that under Rule 801(d)(2)(A) of the

18   Federal Rules of Evidence, only the government can offer into evidence a defendant's prior statement.

19   *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("The self-inculpatory statements, when offered

20   by the government, are admissions by a party-opponent and are therefore not hearsay, . . . but the non-self-

21   inculpatory statements are inadmissible hearsay.").  In contrast, a defendant may not introduce his or her own

22   inadmissible hearsay statements into evidence by eliciting them from defense witnesses or by cross-

23   examining government witnesses.  *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (district

24   court properly precluded defense counsel from eliciting, on cross-examination, defendant's post-arrest

25   statement denying participation in robbery).  In other words, Rule 801(d)(2)(A) precludes the defendant from

26   putting exculpatory statements "before the jury without subjecting [themselves] to cross-examination,

27   precisely what the hearsay rule forbids." *Id*. (citing Fed. R. Evid. 801(c)). *See also United States v. Gomez*,

28   772 F. Supp. 2d 1185, 1197 (C.D. Cal. 2011) (granting government's motion *in limine* to preclude improper

GOVERNMENT MOTIONS IN LIMINE

1   defendant hearsay statements, including his statements regarding his personal use of methamphetamine).

2       The rule of completeness, codified in Rule 106 of the Federal Rules of Evidence, does not mandate a

3   different result.  Rule 106 only applies to writings or recorded statements, not to oral conversations.[1] *Ortega*,

4   203 F.3d at 682 ("the rule of completeness . . . applies to written and recorded statements.").  The rule of

5   completeness does not compel the admission of all statements made during the same event, *e.g.,* the same

6   interview.  *Id*.  ("[Defendant's] non-self-inculpatory statements are inadmissible even if they were made

7   contemporaneously with other self-inculpatory statements."). In this case, the rule of completeness will be

8   inapplicable where the government seeks to introduce the defendant's oral statements made to witnesses,

9   rather than a written record or report containing such statements.  *United States v. Collicott*, 92 F.3d 973, 983

10  (9th Cir. 1996) ("Rule 106 is inapplicable . . . because no writing or recorded statement was introduced by a

11  party").

12      Thus, the government requests that defense counsel be prohibited from eliciting self-serving

13  exculpatory statements from witnesses, including through cross-examination of government witnesses.  The

14  defendants' out-of-court statements that are not offered into evidence by the government are inadmissible

15  hearsay under Fed. R. Evid. 801(c) and do not fall under any exception to the hearsay rule.  *See United States*

16  *v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) ("These statements [by defendant] were inadmissible

17  hearsay; as [defendant] was attempting to introduce them himself, they were not party-opponent admissions,

18  nor did the fact that they were made in a more broadly self-inculpatory confession bring them within the

19  statement-against-interest exception."); *Ortega*, 203 F.3d at 682 (affirming trial court's preclusion of

20  defendant eliciting on cross-examination exculpatory statements given to law enforcement officer). Thus, the

21  Court should preclude the defendant from presenting "self-serving hearsay" that the government is unable to

22  cross-examine[2]. If the defendant wants to introduce her own self-serving statements, she may testify and be

23

24      [1] "If a party introduces all or part of a writing or recorded statement, an adverse party may require the
    introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness

25  ought to be considered at the same time." Fed. R. Evid. 106.

26      [2] A long line of cases supports this motion *in limine. See, e.g.*, *United States v. Liera-Morales*,
    759 F.3d 1105, 1111 (9th Cir. 2014) (permitting government agents to testify concerning incriminating
    portions of post-arrest interview, but precluding defendant from introducing exculpatory statements);

27  *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (defendant's edited confession properly
    admitted into evidence); *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (defendant's

28  exculpatory statements offered by the defense were inadmissible hearsay notwithstanding FBI agent
    testimony about defendant's inculpatory statements); *United States v. Ortega*, 203 F.3d 675, 682 (9th

GOVERNMENT MOTIONS IN LIMINE

cross-examined.

Similarly, the defendants cannot admit their own statements through other witnesses as prior consistent statements under Rule 801(d)(1)(B).  A party seeking to admit the statements under Rule 801(d)(1)(B) must satisfy four elements: (1) the declarant-defendant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant-defendant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.  *United States v. Chang Da Liu*, 538 F.3d 1078, 1086 (9th Cir. 2008) (citing *United States v. Collicot*, 92 F.3d 973, 979 (9th Cir. 1996)). *See also Tome v. United States*, 513 U.S. 150, 157-58 (1995).  Thus, to admit his or her own statements as prior consistent statements under Rule 801(d)(1)(B), a defendant would have to testify at trial and be subject to cross-examination.

### E.   MIL No. 5: The Defendants Cannot Introduce "Others Did it Too" Evidence

There is no "but other people did it too" defense to wire fraud.  Thus, reference to any wrongdoing committed by individuals other than the defendants or co-conspirators during voir dire or trial would be irrelevant and should be excluded pursuant to Federal Rules of Evidence 401-403.  *See United States v. King*, No. CR-08-002-E-BLW, 2009 U.S. Dist. LEXIS 32935, at *7-8 (D. Idaho Apr. 17, 2009) ("Evidence of selective prosecution . . . would be irrelevant and unfairly prejudicial to present to the jury."); *see also United States v. DiStefano*, 129 F. Supp. 2d 342, 348 (S.D.N.Y. 2001) (rejecting defendant's selective enforcement claim regarding the existence of other uncharged co-workers engaging in the same conduct).  The sole question for this trial is whether the defendant committed wire fraud and money laundering.  The Court should not allow any argument or evidence from the defendants suggesting that they should be acquitted because others have committed fraud and money laundering as well.

---

Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay; rule of completeness does not allow for admission of inadmissible hearsay); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (district court properly sustained government's hearsay objection to defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent).

**F.    MIL No. 6: The Defendants Cannot Introduce Evidence of the Government's Charging Decisions or Alternative Remedies Available through Other Forums**

The defendants may seek to introduce evidence or arguments related to the government's charging decisions in this case; *e.g.*, that other individuals or other transactions were not charged.  The defendants should be precluded from interjecting into the trial any evidence or argument regarding the government's charging decisions or as to the Department of Justice's enforcement practices in general, including the filing of civil lawsuits.

1. The Government's Charging Decisions are Irrelevant and Inadmissible

The Supreme Court has recognized that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute."  *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)).  The latitude traditionally granted to the government in this respect extends as much to the decision of who not to prosecute, as to decisions of who to prosecute.  *See, e.g., Wayte*, 470 U.S. at 607.  Given the broad discretion traditionally afforded to prosecutors, courts have consistently held that evidence or argument regarding charging decisions – including whether to accept a plea, whether to prosecute specific individuals, or whether to reach any other disposition of a case against a potential defendant other than the defendant on trial – should not be admitted at trial.  *See, e.g., United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (the fact of the government's decision not to prosecute someone other than defendant was not admissible under Rule 403 as misleading and confusing to the jury).  *See also United States v. Goldfarb*, No. CR07-00260-PHX-DGC, 2012 WL 1831508, at *2 (D. Ariz. May 18, 2012) (precluding the parties from using evidence of the government's charging decisions to establish, directly or indirectly, defendant's guilt or innocence).

Inquiries into the government's charging decisions have no tendency to make the existence of any fact that is of consequence to the action more probable or less probable and are thus irrelevant.  In other words, such inquiries are without any probative value with respect to the guilt or innocence of the defendant.  Because inquiries into the government's charging decisions and enforcement practices are irrelevant and of no probative value, they should be excluded on that basis alone.  Fed. R. Evid. 402.

In addition, even if the inquiries into the government's charging decisions had any marginal

1   probative value, they are nevertheless substantially outweighed by the danger of unfair prejudice,

2   confusion of the issues, and misleading the jury. Fed. R. Evid. 403. *See United States v. Reed*, 641 F.3d

3   992, 993-94 (8th Cir. 2011) (many factors unrelated to guilt may influence charging decisions and

4   therefore their admission risks misleading the jury and confusing the issues). Thus, the defendant

5   should not be allowed to suggest that the jury consider the government's charging decisions, including

6   whether to charge other individuals the defendant believes were involved in the charged embezzlement

7   or money laundering (or whether other uncharged transactions are criminal), in reaching its verdict.

8       2. The Existing Civil Lawsuit's Remedies Sought, and Other Possible Civil Remedies, are

9   Irrelevant and Inadmissible

10          a. Civil Remedies Irrelevant

11          Following discovery of defendants' scheme, some church members commenced a civil action in

12   hopes to recover the sums taken by them. However, it is irrelevant and potentially confusing to present

13   evidence regarding alternative remedies. *See* Fed. R. Evid. 402, 403.

14          Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its

15   probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

16   misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

17   cumulative evidence." Rule 403 precludes admission of evidence if its probative value is substantially

18   outweighed by the considerations recited in the rule. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th

19   Cir. 2000).

20          Here, Rule 403 strongly weighs against allowing evidence of the remedies sought by the existing

21   civil lawsuit from being introduced at trial. The civil suit seeks different relief from the defendant,

22   asserts causes of action that are predicated upon different legal theories than those at issue in the

23   criminal case, involves different evidentiary burdens, and provides for defenses that may or may not be

24   available to the defendant in the criminal case. By permitting evidence of the civil suit's relief sough, a

25   real danger of unfair prejudice is created. Jurors may (incorrectly) conclude that the victims will be

26   made whole via a civil recovery causing them to ignore certain evidence and overlook the different aims

27   of a criminal case. Similarly, such evidence is likely to confuse and mislead the jury.

28          b. Settlement Negotiations Irrelevant

The government also moves to preclude the defense from making use of settlement negotiations, or any statements made in the course of such negotiations in the existing civil lawsuit at trial (to the extent there are any).  Such evidence is inadmissible under Federal Rule of Evidence 408(a), which prohibits "evidence of statements made in compromise negotiations" regarding a claim.  The text of the rule prohibits admission of either the actual settlement of a claim or statements made in the course of such a settlement; that prohibition extends to offering the evidence to establish or disprove a claim.

The broad prohibition against admitting settlement statements into evidence has historically been based on two concepts.  First, statements made in the course of such negotiations are irrelevant because they are frequently motivated by a desire to achieve peace rather than to concede fault.  FRE 408, Commentary to 1972 Proposed Rules.  That is to say that a party's statements made in an effort to resolve litigation have little or no probative value and cannot later be considered by a trier of fact regarding the merits of a claim.  *See, e.g., United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982).  Second, there is a strong policy preference to encourage litigants to compromise and settlements are more likely to occur when those litigants are protected from later use of settlement statements.  FRE 408, Commentary to 2006 Amendment (admission of settlement statements would "chill" settlement negotiations, which is contrary to public policy).

Rule 408(a) applies in federal criminal cases.  *See, e.g., United States v. Technic Services, Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (analyzing admissibility of settlement agreement with federal agency under earlier version of Rule 408).  Federal Rule of Evidence 1101(b) makes all of the federal evidentiary rules applicable in criminal cases unless there is a specific prohibition in a particular rule, which does not exist in Rule 408.  *See United States v. Arias*, 431 F.3d 1327, 1336-37 (11th Cir. 2005).  Moreover, "applying Rule 408 to criminal cases furthers the policy interests that undergird that Rule," including the encouragement of settlements and the recognition that evidence of compromise is not probative of liability in a criminal case.  *Id*. at 1337.  Accordingly, any evidence of settlement discussions, or statements made in the course of such discussions in the Companies' existing civil lawsuit should be excluded at trial.

### G.    MIL No. 7: The Defendants Cannot Introduce "Blame the Victim" Evidence

The United States also anticipates that the defendants may attempt to construct a defense

1   involving tactics of "blaming the victim."  This may also include drawing the jury's attention away from

2   the relevant facts and law of this case by bringing in evidence or making arguments concerning

3   unrelated business practices or possible wrongdoing by others, specifically C.W., employees of

4   companies controlled by C.W., the Church, other church members, and any alleged deficiencies in their

5   respective bookkeeping efforts.

6       The law is plain that a victim's purported negligence is no defense to a fraud charge.  *United*

7   *States v. Serfling*, 504 F.3d 672, 676,679 (7th Cir. 2007); acc*ord United States v. Moore*, 923 F.2d 910,

8   917 (1st Cir. 1991) (approving jury instruction explaining that it is no defense to fraud that the bank

9   might have prevented its losses by better internal procedures).  Moreover, it is improper to "blame the

10  victim" in nearly every criminal case.  For example, it is no defense to burglary that the victims left their

11  front door unlocked.  This reasoning has been applied to a number of different fraudulent schemes.  It

12  would be irrelevant if some bank or lender employee had overlooked a "red flag" associated with a

13  fraudulent loan application.  *United States v. Winkle*, 477 F.3d 407, 414 n.3 (6th Cir. 2003) ("[T]he

14  victim of a bank fraud is the bank, not the CEO of the bank, and approval of a bank officer does not

15  relieve a defendant of liability for bank fraud.") (citations omitted); *see also United States v. Molinaro*,

16  11 F.3d 853, 857 (9th Cir. 1993) ("'[i]t is the financial institution itself - not its officers or agents - that is the

17  victim of the fraud the statute proscribes.'") (citation omitted). Similarly, in bank fraud schemes, the

18  approval or participation of lender employees or officers in the defendants' fraud scheme is not any kind of

19  defense to the instant charges. *United States v. Saks*, 964 F.2d 1514, 1518-19 (5th Cir. 1992) ("bank

20  customers who collude with bank officers to defraud banks may also be held criminally accountable either as

21  principals or as aiders and abettors"). Or, in a scheme to induce travel for a fraudulent purpose, the Second

22  Circuit rejected the defendant's argument that the "foolishness of the [victim] in [the defendant's] scheme

23  somehow vitiates [the defendant's] fraudulent intent." *United States v. Thomas*, 377 F.3d 232, 243 (2nd Cir.

24  2004) (collecting cases and upholding district court's exclusion of evidence and testimony relating to

25  gullibility of victim).

26      These holdings are applicable here. The defendant may argue that the Companies (or its employees)

27  were aware, or should have been aware, of his fraudulent transactions well before he completed his scheme,

28  and, in his view, they condoned his actions by not preventing them. But there is no requirement that a victim

1 | of a fraud scheme act as a person of ordinary prudence would act. *United States v. Ciccone*, 219 F.3d 1078,
2 | 1083 (9th Cir. 2000). Thus, a victim's negligence, carelessness or gullibility is no defense to the instant
3 | charges. As a result, the Court should direct that the defendants' counsel not argue, or even suggest, in voir
4 | dire, opening statements, cross-examination, summation or otherwise, that the Companies and their
5 | employees could have been more diligent in their dealings with the defendants or somehow that they too
6 | engaged in misconduct in their dealings with the defendants.

7 | ### H.   MIL No. 8: Interstate Nexus Element

8 | Money laundering under 18 U.S.C. 1956(a)(1)(B)(i) includes an interstate nexus element. *See* 18
9 | U.S.C. § 1956(c)(4).  This may be met by showing that one of the financial institutions involved in the
10 | charged transaction is insured by the FDIC.  *E.g., U.S. v. Ladum*, 141 F.3d 1328, 1339 (9th Cir. 1998)
11 | (considering challenge to interstate nexus evidence under § 1956(a)(1)(B)(i) and holding "[e]vidence of
12 | a transaction involving financial institutions insured by the Federal Deposit Insurance Corporation
13 | (FDIC) is also sufficient to meet § 1956's interstate commerce requirement.").  Proof of insurance may
14 | established with minimal evidence.  For example, inscriptions on bank documents that indicate a bank
15 | was FDIC insured may be considered in establishing the bank's status.  *United States v. Allen,* 88 F.3d
16 | 765, 769 (9th Cir. 1996) (bank's FDIC status proved by words "Member FDIC" on bank statements). Or,
17 | judicial notice may be taken of a financial institution's status.  *E.g., U.S. v. Behmanshah*, 49 Fed.Appx
18 | 372, fn. 2 (3d Cir. 2002) (unpubl.).

19 | ### I.   MIL No. 9: The Defendants Tax Returns Can be Admitted

20 | This case concerns a scheme to defraud and money laundering that began in August 2004 and
21 | continued through to the end of January 2016.  As such, the defendants' income—both legitimate and
22 | illegitimate—during those years is squarely at issue.  More specifically, to meet the government's
23 | burden of proof regarding the illicit nature of these transfers and the defendants' knowledge of his
24 | fraudulent scheme and money laundering, the government may introduce evidence of the defendants'
25 | purported legitimate and claimed income during the relevant years, which is reflected in their tax
26 | returns.  As a result, the tax returns constitute direct evidence of the defendants' fraudulent scheme and
27 | money laundering.  Indeed, courts have frequently allowed their admission in similar cases, holding, for
28 | example, that "failure to report significant sums of money in tax filings can be direct evidence of and is

1  relevant to defendant's participation in, money laundering." *United States v. Barrett*, 153 F. Supp. 3d

2  552, 567 (E.D.N.Y. 2015).  Similarly, the Second Circuit considered the issue in *United States v.*

3  *Monaco*, which involved a money laundering prosecution and evidence from the government that the

4  defendants "had been spending money in amounts significantly in excess of earnings reported by them

5  on tax returns and Social Security earnings reports." *See* 194 F.3d 381, 387 (2d Cir. 1999).  The Second

6  Circuit upheld the admission of the tax-related evidence.  *Id.* at 387–88.  Similarly here, the government

7  believes that the tax returns will establish that the defendants spent monies that far exceeded what they

8  claimed in income, thus helping establish their knowledge of both the fraudulent scheme and money

9  laundering.

10       Additionally, the returns are inextricably intertwined with the charged conduct.  For example, an

11  explanation by the Government as to what income the defendants were legitimately entitled to may be

12  necessary to help establish the income and monies that they were *not* entitled to.  The Government

13  could, as a further example, argue that the amount of money laundered by the defendants exceeded their

14  legitimate income.  *See, e.g., United States v. Jae Shik Cha*, 97 F.3d 1462, at *1 (9th Cir. 1996)

15  (unpubl.) (tax returns were inextricably intertwined with the money laundering charges because the

16  defendant's "tax returns, showing insufficient legitimate income to support the $4.5 million laundered

17  through the Hong Kong account, were offered to show that the money came from drug transactions");

18  *Cf. United States v. Dubin,* 91 F.3d 155, at *3 (9th Cir. 1996) (unpubl.) (affirming admission of tax

19  returns because they were inextricably intertwined with the explanation of the source of funds and assets

20  of the defendant in bankruptcy fraud).

21       Alternatively, the tax returns are admissible under Rule 404(b).  They show the defendants'

22  knowledge, intent, motive, and lack of mistake regarding the scheme and money laundering.  *E.g.,*

23  *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000) (uncharged tax returns admissible under Rule

24  404(b) to show knowledge of defendant's theft of government money and property); *United States v.*

25  *Osarenkhoe*, 439 F. Appx. 66, 67–68 (2d Cir. 2011) (unpubl.) (affirming admission of uncharged tax

26  return in mail fraud and money laundering case because it showed "the defendant's fraudulent intent and

27  absence of mistake in her improper receipt of adoption subsidy payments").

28       Finally, and separate from an effort to introduce the documents during its case in chief, if the

1   defendants testify at trial, the government may impeach them with their tax returns. *Cf. United States v.*

2   *Rubio-Estrada*, 857 F.2d 845, 850 (1st Cir. 1988). The First's Circuit's decision in *Rubio-Estrada* is

3   instructive. There, Judge Breyer, speaking through the First Circuit, held that an income tax return

4   could be used to impeach the defendant during cross-examination when the line of questions was

5   intended to expose the defendant's false representations about transactions recorded in a ledger that the

6   government argued were actually criminal transactions. *Id.* The First Circuit concluded, "[t]his use is

7   not forbidden by Rule 404. Nor does Rule 403 prohibit the court from permitting the government to use

8   the tax returns for this purpose." *Id.* Here, the government may ask a similar line of questions using the

9   defendant's tax returns to impeach any offered testimony by him that certain ledger entries he made

10  were legitimate. Under *Rubio-Estrada*, such questions would not run afoul of Rule 404 or 403.

11          **J.      Other Evidentiary Issues**

12          To the extent other evidentiary issues arise during trial that are not contemplated by the

13  government's pre-trial filings, including the Trial Brief, the government is receptive to any request from

14  the Court for a "bench brief" or supplemental briefing.

15  DATED:       July 11, 2019                          Respectfully submitted,

16                                                      DAVID L. ANDERSON
17                                                      United States Attorney

18                                                      /s/
19                                                      PATRICK R. DELAHUNTY
                                                        SARAH E. GRISWOLD
20                                                      Assistant United States Attorneys

21

22

23

24

25

26

27

28