CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant WEILIN CHANG

JULIA M. JAYNE, State Bar No. 202753
Jayne Law Group, P.C.
483 9th Street, Suite 200
Oakland, CA 94607
Telephone: 415-623-3600
Facsimile: 415-623-3605
julia@jaynelawgroup.com

Attorney for Defendant JONATHAN CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN CHANG & WEILIN CHANG,<br><br>Defendants. | Case No. 16-cr-00047 EJD<br><br>**MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS** |

## I. INTRODUCTION

On July 1, 2019, this Court issued its Order; Doc. No. 100; in response to the defense motion to suppress items seized from the Changs during a search warrant execution. Doc. Nos. 90 & 93. The Order forbids the admission of items seized under the Warrant's Category 10 at trial. The defense has identified several categories of documents that the FBI seized under the purported authority of Category 10, and in Section II, below, we will identify these documents and their corresponding Bates ranges to ensure all parties understand and comply with this Court's Order. Additionally, now that the issue of admissibility of individual items will be before this Court, it is appropriate to address the overbreadth of other categories and the lack of probable cause for the seizure of other items, which we discuss in Sections III, IV, and V.

## II. ITEMS AND BATES RANGES SEIZED UNDER OVERBROAD CATEGORY 10

As this Court found, Category 10, which purportedly allowed the seizure of "All records, documents, and materials, including correspondence, related to any of the following individuals: Jonathan CHANG and Weilin CHANG," is overbroad, and the government may not use evidence seized under the purported authority of Category 10.

In Subpart A, below, we list, as examples, entire groups of documents which must be excluded because they were seized under the purported authority of Category 10.

In Subpart B, we will explain why any attempt by the by the government, four years after the seizure, to now provide justification for seizing items in groups 1B06, 1B07, 1B08, IB24 1B31, 1B32, 1B45, 1B46, 1B51, 1B52, 1B53 and 1B54 as falling in other categories, instead of relying upon the labels placed on the items seized during the search, would be inappropriate.

### A. Groups of Documents Illegally Seized Under Category 10

According to the discovery produced to the defense, the FBI labeled the seized documents by category, and assigned a Bates range to each group of seized documents, beginning with group 1B01 and going through to 1B54.[1] For example, in group 1B01, titled "cardboard Box /w I Pilot documents Room

---

[1] It seems the government seized the documents and labeled each group sequentially, yet the defense has not been able to identify all the numbers in the series in the government's discovery productions. So, while it appears there are numbers from 1B01 through 1B54, we do not have, for instance, 1B05, 1B09 through 1B16, 1B18 through 1B21, 1B25, 1B26, 1B30, 1B33 through 1B38, 1B40 through 1B43, and 1B47 through 1B49.

MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS
Case No. 16-cr-00047 EJD                                                                                                          1

B" the Bates numbers begin at IB01-000001.  For group 1B02, titled "cardboard box w/ 2006 IPilot documents + co Room B" the Bates numbers begin at IB02-000001.  The categories stated here, and more fully described below are the categories that were seized under the undisputedly overbroad portion of the warrant.  Attached as Exhibit 1 are the labels the agents prepared to describe each group of items seized.  However, as we explain in Sections IV and V, the search under the remaining categories, now that this Court has suppressed anything seized under Category 10, was also overbroad and the government should be required to proffer the justification for the seizure of the documents it hopes to introduce in to evidence.

- 1B06 - "Bankers box labeled Jonathan Chang Room B"

This group of items seized, categorized as "Jonathan," does not relate to any of the categories the government contends are sufficiently particularized. The only purported authorization for the seizure of these materials would be Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB06-000001 through IB06-001045.

- 1B07 – "Tempxxxx-P Box addressed to W. Chang w/ misc records Room B"[2]

Here, the agents simply seized "miscellaneous records" related to "W. Chang" and did not relate the documents to any permissible category in the warrant. The only purported authorization for the seizure of these materials would be Category 10.  Accordingly, the Court's Order excludes from admission all documents bearing Bates IB07-000001 through IB07-002628.

- 1B08 – "Cardboard box w/ IPilot documents from 1999-2007 Room B"

Although the warrant authorized the seizure of I Pilot materials,[3] here, agents seized items clearly outside of any permissible date range found in the warrant (which did not actually carry *any* date restriction) or supported by the affidavit, had the agents properly incorporated the affidavit and relied upon it during the search.  The earliest date arguably supported by the affidavit would be 2004.  Therefore, the agents were relying upon Category 10.  Accordingly, the Court's Order excludes from admission all documents bearing Bates IB08-000001 through IB08-001014.

---

[2] Here the x's indicate the handwriting on the label was illegible

[3] As discussed below, we contend there was no probable cause for the seizure of I Pilot materials because the Affidavit made no mention of I Pilot.

MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS
Case No. 16-cr-00047 EJD                                                                                                                2

- IB24 – No label provided to begin this grouping of documents

The group of documents collected in IB24 and produced by the government to the defense contained no label. The documents in IB24 are a mishmash of miscellaneous materials. Government Exhibit 54,[4] bates 1B24-0112-124, attached here as Exhibit 2, is a used car purchase agreement, including financing terms and a service agreement. This purchase agreement, which does not fall under any permissible category named in the warrant, is found with other irrelevant documents in the IB24 grouping that the FBI collected during this overbroad seizure. Additional examples of the overbroad seizure of documents within the IB24 group are a City of Sacramento Utility Bill; Exhibit 3 (Bates 1B24-0033-34); a AAA Auto Insurance bill; Exhibit 4 (Bates 1B24-0035-36); and a Solar City bill. Exhibit 5 (Bates 1B24-0037). The only purported authorization for the seizure of these materials would be Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates 1B24-0001 through 1B24-0133.

- 1B31 – "RSPMHP Records found on desk in Room F"

The term RSPMHP is not mentioned either in the warrant or the affidavit and therefore, the only purported authorization for these materials would be Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB31-000001 through IB31-000074.

- 1B32 – "financial documents found in desk drawer Room F"

Because the seizing agents did not even attempt to shoehorn these "financial documents" into any particular authorized category, the only purported authorization to seize these items would be Category 10. Moreover, the labeling of the categories of seized documents demonstrates that the agents thought they had *carte blanche* to seize anything. The agents simply used the generic term "financial documents" and then provided the location from which these financial documents were seized. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB32-000001 through IB32-000727.

- 1B45 – "Pilot Inc, Schwab Docs (GBASE), Tax docs from Taiwan, social security disability found on shelf Room D"

The warrant does not mention the terms "GBASE," "tax docs from Taiwan," or "social security

---

[4] As identified by the government's Exhibit List filed July 8, 2019. Doc. No. 109.

MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS
Case No. 16-cr-00047 EJD         3

disability documents." An example of the seized disability documents, attached as Exhibit 6, are documents that have nothing to do with any of the alleged criminal behavior purportedly described by the warrant. See also Bates IB45-000328-333 and IB45-000528-569. Again, the only purported authorization for the seizure of these materials would be Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB45-000001 through IB45-048407.

- 1B46 – "HOC4, HOCA LLC, I Pilot, TC.C, HOCA Inc., Insurance Policies, HOCCC found of shelf in Room D"

Under this broad composite category, the agents seized some materials arguably authorized by the warrant but gathered others under the generic category, "Insurance Policies," a category that was not listed in the warrant. The defense has no idea how the government can decide which material was seized under the arguably authorized categories and which was seized under the unauthorized generic category of "insurance policies." For instance, IB46-001775 is a AAA Rental Property Policy Declaration covering 9920 Pipit Way. Ex. 7. Pipit Way is not mentioned in the warrant. The agents also seized a February 22, 1999 letter, Bates stamped IB46-001906, from an attorney regarding the possible formation of an unnamed non-profit entity. Ex. 8. Correspondence from attorneys could only arguably be authorized under the overbroad Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB46-000001 through IB46-001922 which are not facially related to HOC4, HOCA LLC, TC. C and HOCCC.

- 1B51 – " Property documents for property in china (most in Chinese) found on bookshelf in Room G"

The warrant does not authorize seizure of generic "property documents for property in china" and therefore the only category purportedly authorizing the FBI's seizure of the documents in this category is the overbroad Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB51-000001 through IB51-001160.

- 1B52 – "Bank statements, HOCA LLC, misc business records (in blue bin) found on shelf in Room D"

The label "misc[ellaneous] business records" demonstrates that the agents responsible for seizing this group of documents did not look to the warrant to guide their seizure, but simply seized whatever

they chose in their own discretion. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB52-000001 through 1B52-003698.

- 1B53 – "1996-2011 Tax documents and bank statements (in blue bin) found on shelf in Shed P"

This category contains records dating from 1996, which is nearly a decade before 2004, the earliest year arguably supported by probable cause in the affidavit. It is clear that the agents simply seized anything related to the Changs, as set forth in Category 10. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB53-000001 through IB53-008494.

- 1B54 – "HOCA Inc old Wells Fargo Bank statements and misc business records"

Again, this label "misc[ellaneous] business records," as in IB07 and IB52, indicates that the searching agents did not even try to fit the items seized into a particular category authorized by the warrant, but simply seized whatever records they found. Accordingly, the Court's Order excludes from admission all documents bearing Bates IB54-000001 through IB54-006240.

### B. The Labels Applied to the Groups of Seized Materials Contemporaneously Document the Government's Justification for Seizure and Later Explanations Should Be Rejected

While seizing the groups of documents identified above in Subpart A, the agents contemporaneously applied labels, categorizing the seized documents. This real-time sorting and characterization is the best evidence demonstrating why agents seized what they did. Explanations made after the fact and offered by the government in an attempt to salvage an unconstitutional search and seizure should be rejected.

In United States v. De La Jara, 973 F.2d 746 (9th Cir. 1992), the Ninth Circuit indicated that after the fact declarations, made while a motion to suppress is pending which attempt to put a different "spin" on an earlier report, may be "incredible." In De La Jara, the Ninth Circuit rejected such a declaration, which had been accepted by the District Court, "with the definite and firm conviction that the court erred" in crediting the after-the-fact-explanation. Id. at 751.

In De La Jara, an Assistant United States Attorney drafted a declaration for Officer Perez, in which he embellished his report by explaining that he had only heard the Appellant say "speak to an attorney," and had assumed that he was invoking his right to an attorney. Perez' declaration read:

> Shortly thereafter I heard the defendant say something about speaking to an attorney. At that time, the door to the defendant's office was partially open and I was standing approximately 10-15 feet from where the defendant and Agent Rivera stood. I was primarily directing my attention to an individual who was in the adjacent office as well as another employee who I was guarding. There were other law enforcement officers in the area who were talking at the time. SA Rivera appeared to be unhandcuffing the defendant at approximately the time the defendant made the statement. I was unable to hear the exact words which preceded "speak to an attorney," because my attention was directed to the other employees whom I was responsible for guarding, and because there were other police officers talking and walking around in the hallway. Because I heard the defendant say something about wanting an attorney, I assumed he had invoked his rights and told the officer standing next to me that it "sounded like De La Jara was invoking his rights." I then wrote this statement in a police report. In writing the report, I specified that it "sounded" like the defendant was invoking his rights because I did not hear his exact words and thus was not positive that he had in fact invoked his right to an attorney. The district court, without elaboration, rejected Officer Perez' contemporaneous report in favor of his in-court testimony, which followed the version of events recited in the declaration drafted in preparation of the motion to suppress. We are left with a definite and firm conviction that the court erred in doing so. In his initial report, Agent Perez was unequivocal: "I heard DELAJARA say in Spanish that he wanted to call his attorney." Even in the next sentence of the report, while perhaps expressing uncertainty about the legal effect of de la Jara's statement, Perez wrote with certainty that de la Jara had asked to speak to an attorney: "I told the agent who was standing outside the office that it sounded like DELAJARA was invoking his rights because he just asked to call his attorney. The agent asked me if that's what I heard and I said 'yes.' "

The Court of Appeal held: "***We find incredible the government's subsequent attempts, made while appellant's motion to suppress was pending, to inflect Perez' statement with dubiety***." United States v. De La Jara, 973 F.2d 746, 751-52 (9th Cir. 1992).

Here, any subsequent FBI agent declaration or testimony that attempts to put a spin on the contemporaneous labels used during the search and seizure should be rejected.

### III. OTHER WARRANT CATEGORIES ARE UNSUPPORTED BY PROBABLE CAUSE IN THE AFFIDAVIT AND THEREFORE OVERBROAD

While at the hearing on the motion to suppress, the government attempted to have the defense concede that the other categories were specific. The defense made no such concession and in fact argued that the other categories were overbroad, but that the Court did not have to reach that issue because Category 10 allowed the seizure of everything, so that everything seized fell into that category. Now that the issue of the admissibility of individual items is before the Court, it is appropriate to address the overbreadth of other categories and the lack of probable cause for the seizure of other items.

MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS
Case No. 16-cr-00047 EJD                                                                                                        6

As an example, Category 8 in the warrant purported to authorize the seizure of:

> ***All records, documents, and materials, including correspondence, related to any*** of the following companies and/or individuals: HOC Associates, Inc., HOC Associates LLC, Home of Christ Christian Center, The 4th Home of Christ, Via Technologies, Inc. (or any related entities), S3 Graphics, Inc., Panda Networks, Faith, Hope and Love Foundation (or any related entities), T.C. Connection Corporation, ***I Pilot, Inc***, Jonathan and Weilin Chang Trust, Jonathan CHANG, Weilin CHANG, any as yet ***unidentified business entities under the control of Jonathan and/or Weilin CHANG***;

(emphasis added). The phrase "All records, documents, and materials, including correspondence, related to any of the following companies and/or individuals," is just as overbroad as the stricken Category 10. To make matters even worse, neither the affidavit nor the warrant contain any temporal limitation. The affidavit mentions I Pilot only in the list of items to be seized and does not even purport to describe how I Pilot could be involved in the fraud alleged. Similarly, the there is nothing in the affidavit to support the seizure of documents related to "unidentified business entities under the control of Jonathan and/or Weilin CHANG."

Courts have recognized the inherent flaw in affidavits that fail to present facts that would allow even a colorable argument that probable cause exists by holding the Leon good faith exception does not apply to "bare-bones" affidavits. See, e.g., United States v. Leon, 468 U.S. 897, 915 (1984) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.") (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983) (internal quotations omitted); United States v. West, 520 F.3d 604, 610-11 (6th Cir. 2008) ("The Leon good faith exception does not apply to rescue a warrant issued on the basis of a bare-bones affidavit.") (quoting United States v. McPhearson, 469 F.3d 518, 525-26 (6th Cir. 2006); United States v. Pope, 467 F.3d 912, 920 (5th Cir. 2006) ("Bare-bones affidavits typically contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.") (internal quotations omitted); United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) (holding that "[a]n affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare-bones' affidavit" and that the Leon good faith exception was inapplicable to the 'bare-bones' affidavit at hand); United States v. Wilhelm, 80 F.3d 116, 121-22 (4th Cir. 1996) (following the Sixth and Fifth Circuits in holding that the Leon good faith exception does not apply in the

case of a bare-bones affidavit); United States v. Brown, 941 F.2d 1300, 1303 (5th Cir. 1991) ("The affidavits must supply the magistrate with sufficient information to determine that probable cause exists."); United States v. Barrington, 806 F.2d 529, 532 (5th Cir. 1986) (holding the good faith exception does not apply to a bare-bones affidavit); see also United States v. Weber, 923 F.2d 1338, 1344-46 (9th Cir. 1990) (holding that once the affidavit was "stripped of its fat" there were no facts alleged that would suggest the defendant was a child molester or collector of child pornography because defendant had only made one purchase of child pornography; therefore affidavit was "bare-bones" and no good faith exception applied to search for evidence of molestation and collection under Leon); LaFave § 1.3(f) n.118 ("Thus, Leon surely cannot be relied upon by the prosecution when the affidavit does not rise at all above the bare-bones level.") (citing cases).

The term "All records, documents, and materials, including correspondence, related to any of the following companies and/or individuals" is not a term of limitation. It is a blanket authorization to search.

To make matters even worse, the warrant goes on to authorize the seizure not only of documents relating to the named entities but also to anything relating to "unidentified business entities under the control of Jonathan and/or Weilin CHANG." The affidavit simply contains no facts or discussion to support *any* finding of probable cause for such an unlimited search of identified or "unidentified business entities."

Therefore, the government cannot rely upon Category 8 to authorize the seizure of any "unidentified business entities under the control of Jonathan and/or Weilin CHANG." Category 8, just like Category 10, is overbroad and the affidavit fails to provide probable cause to support the extensive search and wholesale seizure of broad swaths of documents that were unrelated to any particularized category in the warrant.

//

//

//

### IV. THE WARRANT FAILED TO PUT ANY TIME LIMIT ON THE SCOPE OF THE AUTHORIZED SEIZURE AND THE AFFIDAVIT FAILED TO PROVIDE PROBABLE CAUSE FOR ANY SEIZURE EARLIER THAN 2004

Although the warrant describes the alleged fraudulent activities as occurring "[b]etween in or about 2004 and 2011[5]," warrant paragraph 14, the warrant did not contain any temporal limitation on the materials purportedly authorized for seizure. Therefore, according to the text of Attachment B to the warrant, the FBI was purportedly authorized to seize anything related to the Changs from the dawn of time to the date of the search. When a warrant, such as the one here, contains no time limitation on the items that can be seized, it is a general warrant. See Groh v. Ramirez, 540 U.S. 551, 563 (2004).

The lack of a temporal limitation may have contributed to the sweeping search here, where the FBI seized anything and everything without a time limit or a description limiting their search and seizure. For instance, in document group 1B53, as indicated by the label applied during the search warrant execution, agents seized tax records from 1996 through 2003. The earliest relevant period for which the warrant affidavit arguably could have supplied probable cause was 2004. This search for tax records was far beyond the probable cause provided by the affidavit.

We will provide additional examples of the overwhelming breadth of the search below and provide a Court with a USB drive, Exhibit 9, containing all the documents seized, demonstrating that the government simply swept up all the paper in the home without regard to any purported limitations in the warrant.[6]

### V. EXAMPLES OF THE DOCUMENTS THAT DEMONSTRATE THE SWEEPING NATURE OF THE SEARCH

- 1B06 - "Bankers box labeled Jonathan Chang Room B"

In 1B06, labeled "Bankers box labeled Jonathan Chang Room B," the agents seized email going back to 1999 and 2000; Exhibit 10 (Bates IB06-000004 and IB06-000009); a "BOM Explosion Report"

---

[5] The warrant contains references to information occurring in 2002 and 2003 as background for the alleged fraud beginning in 2004, but there are no allegations that the description of the activities in 2002, HOC4's acquisition of funds, paragraph 18, issuing receipts, paragraph 19, or preparing balance sheets, paragraph 35, are fraudulent. There is also an allegation in paragraph 25 "that at an unknown date prior to October, 2004, Jonathan asked Cher for a bridge loan." The reference, however, appears to refer to a date in 2004.

[6] Exhibit 9 here contains a placeholder for the USB drive physically lodged with the district court.

and nearly one hundred pages relating to the business processes of Diamond Multimedia, that have no relationship to any financial transaction. Ex. 11, see also, e.g., Bates IB06-000096, Process flow chart.

- 1B07 – "Tempxxxx-P Box addressed to W. Chang w/ misc records Room B"[7]

In IB07 the government seized more than a hundred of pages of government pamphlets relating to: "White House Faith Based and Community Initiatives." Exhibit 12 (see additionally Bates IB07-001242-1347); and more than a thousand pages of documents related to a Coretech restructuring plan, from 2002, many of which are labeled "confidential" "eyes only" and "attorney client privileged." Ex. 13 (see additionally Bates IB07-001436-2628). The government also seized a master of divinity diploma; Ex. 14; an "IPR Contribution Agreement" from 2002; Ex. 15 (IB07-001405-1415); documents from 2002 related to share issuances and sales of assets between Pigoo, Co. Ltd, VIABASE Co., Ltd., and VIA Cortech Co., Ltd.; Ex. 16 (IB07-001353-1370); and a 2002 Memorandum of Understanding between VIABASE and Pigoo. Ex. 17 (IB07-001501-1503).

- 1B08 – "Cardboard box w/ IPilot documents from 1999-2007 Room B"

Although the warrant authorized the seizure of I Pilot materials, the affidavit contains no mention of I Pilot, and many of the items stuffed in this category do not even relate to I Pilot.

For example IB08-000137 is a 2004 email from Grace N Hwang to Melody Chao & Jonathan Chang re "Semi-Annual report from Vision Tech in Beijing." Ex. 18.

Exhibit 19 contains examples of are documents written in Chinese dated 2001 to 2002. See also Bates IB08-000161-243. The repeated seizure of documents written in Chinese is a good example of the callous disregard of any alleged limitations in the warrant. If the agents were limiting their search in any way, before seizing a document written in Chinese, someone familiar with Chinese writing would have to look at the document and see if that document fell within the list of items to be seized in by the warrant. The defense has seen nothing to indicate such a procedure was followed. Instead, the government simply scooped up everything written in Chinese and chose to translate some of it at a later date.

IB08-000245-249 are Vision Tech income statements. Ex. 20. IB08-000250-262 is a Vision Tech Joint Venture Agreement. Ex. 21. Vision Tech is very different than IPilot and is not mentioned in the warrant. This seizure of Vision Tech documents and labeling them as IPilot documents is just

---

[7] Here the x's indicate the handwriting on the label was illegible

MOTION IN LIMINE NO. 6 - DEFENSE MEMORANDUM REGARDING ORDER SUPPRESSING SEIZED MATERIALS
Case No. 16-cr-00047 EJD                                                                                            10

another example of the dragnet search performed by the agents.

- IB24 – No label provided to begin this grouping of documents.

Above, in Subpart A of Section II, we described the overbreadth of documents seized in this grouping, such as the used car purchase agreement, the utility bills, and insurance bills.

- 1B31 – "RSPMHP Records found on desk in Room F"

As indicated above, the term RSPMHP is not mentioned either in the warrant or the affidavit. Therefore, the agents simply took anything and everything they found, without *any* regard to the warrant. An agent would not seize such materials, not even mentioned in the warrant, and label and group such unmentioned materials together, unless they believed they had *carte blanche* to seize whatever they desired, without limitation.

- 1B32 – "financial documents found in desk drawer Room F"

Examples of overbroad seizures within the 1B32 group of documents include IB32-000245, a "Customer Transfer" dated May 28, 2002.  Ex. 22.  IB32-000341-348 is a credit report dated May 17, 2004.  Ex. 23.  IB32-000372 is a bill from Deloitte & Touche dated July 4, 2001 for professional services.  Ex. 24.  IB32-000276 is a November 30, 2001 Taipei bank request for confirmation of deposit accounts. Ex. 25.  All of these examples are outside any arguable date range or category described by the warrant or supported by the affidavit.

- 1B45 – "Pilot Inc, Schwab Docs (GBASE), Tax docs from Taiwan, social security disability found on shelf Room D"

In 1B45, the agents seized thousands of pages of Binary Software Agreements relating to software licenses in the 1990s. See IB45001533-9354, e.g. Ex. 26 and 27.  We previously discussed the overbroad seizure of social security disability documents in the 1B45 section, above.

- 1B46 – "HOC4, HOCA LLC, I Pilot, TC.C, HOCA Inc., Insurance Policies, HOCCC found of shelf in Room D"

In group IB46, the agents seized attorney client privileged communications regarding a lawsuit between Wells Fargo leasing and the Home of Christ Ex. 28, IB46-00002.  In IB46-000978, the agents seized a AAA homeowner's policy declaration.  Ex. 29.

1  • 1B51 – " Property documents for property in china (most in Chinese) found on bookshelf in
2    Room G"

3   While the label for the group of documents seized under 1B51 demonstrates the agents made a
4 wholesale seizure with no regard for any purported judicial limitations, the following are several
5 examples of the agents' overbroad seizures.  IB51-000331-332 is a 2003 invoice for shanghai foreign
6 investment. Ex. 30.  IB51-000354-358 are documents in Chinese dated 2003. Ex. 31.  IB51-000361-371
7 are more 2003 documents in Chinese.  Ex. 32.  Finally, IB51-000389-90 is a Shanghai Certificate of Real
8 Estate Ownership dated 2003.  Ex. 33.

9   • 1B52 – "Bank statements, HOCA LLC, misc business records (in blue bin) found on shelf in
10    Room D"

11   Again, while some of the material here may have been properly seized under a more limited
12 warrant, the seizure of IB52-002112, a legal bill; Ex. 34; Trademark material; Ex. 35, IB52-002131-
13 2136; and a Sacramento utilities bill; Ex. 36, IB52-003382; demonstrate how the agents disregarded any
14 purported limitations in the warrant.

15  • 1B53 – "1996-2011 Tax documents and bank statements (in blue bin) found on shelf in Shed
16    P"

17   Simply on the label's face, the tax documents from 1996 through 2003 are outside of any arguably
18 authorized date range.  Yet, there are more irrelevant and untimely document examples within the 1B53
19 group.  Bates range IB53-000002-12 contains miscellaneous documents in Chinese that appear to be
20 dated from 2003. Ex. 37.  These documents do not even appear to correspond to the group label the
21 agents designated.  IB53-003326 is a Bank of America statement from 2003.  Ex. 38.  IB53-003934 is a
22 billing statement from UC Berkeley from 2003.  Ex. 39.  IB53-004079 is a Discover credit card
23 statement from the year 2000. Ex. 40.  IB53-005112 is another Bank of America statement, but from
24 2001.  Ex. 41.

25  • 1B54 – "HOCA Inc old Wells Fargo Bank statements and misc business records"
26   While the box labeled old financial documents does contain some materials a more properly
27 focused warrant could authorize, it also contains dental billing records for Jonathan Chang; Ex. 42,
28 1B54-005572;  miscellaneous documents in Chinese; Ex 43, IB54-001850; materials from Royal Servant

Missionaries; Ex. 44, IB54-003561; and other random material demonstrating that the agents just scooped up everything available, paying no heed to the warrant, whatsoever.

## VI. CONCLUSION

As the Court can see for itself from the USB drive physically lodged with the district court, Exhibit 9, and the description of the massive seizure above, the agents simply conducted a wholesale seizure of whatever documents they found, without considering the "limiting" categories of the warrant or the time frame of the events alleged in the affidavit. The agents simply vacuumed up whatever documents could be found on site. As a result of the overbroad seizure, the government should not be able to introduce any of the material seized under warrant in this case, because at this point in time, it is impossible to tell which item was seized under which category.

Dated: JULY 11, 2019                    Respectfully submitted,

                                        /s/
                              Christopher J. Cannon
                              Matthew A. Laws
                              Attorneys for WEILIN CHANG

                                        /s/
                              Julia M. Jayne
                              Attorney for JONATHAN CHANG