1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                        SAN JOSE DIVISION

7

8    UNITED STATES OF AMERICA,              Case No.  16-cr-00047-EJD-1
                    Plaintiff,
9                                           **ORDER DENYING MOTIONS FOR
            v.                              JUDGMENT OF ACQUITTAL AND
10                                          FOR A NEW TRIAL**

11   JONATHAN CHANG,                        Re: Dkt. Nos. 224, 225
                    Defendant.
12

13          Before the Court are Defendant Jonathan Chang's two post-trial motions: his Motion for

14   Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, Dkt. No. 224, and his

15   Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33, Dkt. No. 225.  This

16   Order follows full briefing and oral argument, which was heard on August 3, 2020.  For the

17   reasons below, the Court will DENY both motions.

18   I.     **BACKGROUND**

19          Defendant Jonathan Chang and his wife and codefendant, Grace Chang, were charged with

20   one count of conspiracy to commit wire fraud (Count 1); four counts of wire fraud (Counts 2-5);

21   one count of conspiracy to commit money laundering (Count 6); and three counts of money

22   laundering (Counts 7-9).  Dkt. No. 1 (Indictment).  The Indictment charged Mr. and Mrs. Chang

23   with engaging in a scheme through which they fraudulently obtained money, short-term loans, and

24   real property from the church Home of Christ 4 ("HOC4") and from church donor Cher Wang.  *Id.*

25   ¶¶ 9-22.  Mr. and Mrs. Chang were longtime members of HOC4; Mr. Chang was also part of the

26   church leadership during periods of the scheme to defraud.  Dkt. No. 237-1 (Tr. at 1339-40).  The

27
28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL
                                          1

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Indictment alleges, among other things, that Defendant falsely represented to Cher Wang that two organizations he established and controlled—Home of Christ Associates, LLC and Home of Christ Associates, Inc., (collectively, "HOCA")—were affiliated with HOC4 in order to obtain donations that were intended for HOC4.  Indictment ¶ 10.  Defendant is further alleged to have fraudulently induced HOC4 to transfer funds from its financial account to HOCA's account and to sell its church facility to HOCA.  *Id.* ¶¶ 19-20.  The scheme allegedly spanned September 2004 to January 2016 and resulted in a loss of approximately $7.4 million by Cher Wang and HOC4.  *Id.* ¶¶ 9, 22.

This Court conducted a 13-day jury trial in August and September 2019, at the conclusion of which the jury found Jonathan Chang guilty of four counts of wire fraud (Counts 2-5) and three counts of money laundering (Counts 7-9).  *See* Dkt. Nos. 199 (minute entry), 200 (verdict form).  However, the jury did not reach a unanimous decision as to whether Jonathan Chang committed Counts 1 and 6 or as to whether Grace Chang committed any of the nine counts; accordingly, the Court declared a mistrial as to those counts.  *See* Dkt. Nos. 199, 200.  The Government subsequently dismissed without prejudice all the charges that resulted in a mistrial.  Dkt. No. 221.

On February 10, 2020, Defendant Jonathan Chang filed both his Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, Dkt. No. 224 ("Rule 29 Mot."), and his Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33, Dkt. No. 225 ("Rule 33 Mot.").  The Motion for Judgment of Acquittal was originally timely made at trial, *see* Dkt. No. 204 (8/27/29 Tr. at 88); it challenges the sufficiency of the evidence to support Mr. Chang's wire fraud and money laundering charges.  The Motion for a New Trial reiterates Defendant's challenge to the sufficiency of the evidence.  It is also brought on the additional grounds that the Court committed evidentiary errors in admitting the testimony of the Government expert and certain exhibits seized under the search warrant; that there was a material variance between the Indictment and the proof at trial; and that the Government discussed in its closing argument certain facts not introduced at trial.  The Government opposed both motions on March 4,

United States District Court
Northern District of California

1    2020, *see* Dkt. No. 237 ("Opp. re Rule 29 Mot."), Dkt. No. 238 ("Opp. re Rule 33 Mot."), and

2    Defendant replied on March 11, 2020, *see* Dkt. No. 242 ("Reply re Rule 29 Mot."), Dkt. No. 243

3    ("Reply re Rule 33 Mot.").

4         In addition, on March 31, 2020, Defendant filed a supplemental brief in support of his

5    Motion for a New Trial.  Dkt. No. 246 ("Def. Supp. Br.").  There, Defendant seeks a new trial on

6    the additional ground that, pursuant to the Ninth Circuit's March 20, 2020 decision in *United*

7    *States v. Miller*, 953 F.3d 1095 (9th Cir. 2020), the Court improperly instructed the jury on the

8    intent to defraud element of wire fraud.  The Government responded in a supplemental opposition

9    brief filed May 1, 2020, arguing that the instructional error was harmless.  Dkt. No. 252 ("Gov't

10   Supp. Br.").

11        Both motions were heard via Zoom hearing on August 3, 2020, Dkt. No. 258, and are now

12   ripe for the Court's decision.

13   **II.    MOTION FOR JUDGMENT OF ACQUITTAL**

14        Rule 29 provides that a court "may set aside the verdict and enter an acquittal" if "the

15   evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a), (c).  However, "[t]he

16   hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high."

17   *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).  The verdict must stand if, "after

18   viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

19   have found the essential elements of the crime beyond a reasonable doubt."  *United States v.*

20   *Niebla-Torres*, 847 F.3d 1049, 1054 (internal quotation marks and citations omitted).  The Court is

21   mindful that, under this standard, "it is not the district court's function to determine witness

22   credibility" or otherwise substitute its view of the evidence for the jury's.  *United States v.*

23   *Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).  Instead, all "conflicting evidence is to be

24   resolved in favor of the jury verdict."  *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th

25   Cir. 2007).  Stated differently, "the government does not need to rebut all reasonable

26   interpretations of the evidence that would establish the defendant's innocence, or 'rule out every

27
28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

hypothesis except that of guilt beyond a reasonable doubt.'"  *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

As noted above, Defendant Jonathan Chang moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to all seven counts of which he was convicted on the ground that no reasonable juror could have found guilt beyond a reasonable doubt based on the Government's evidence at trial.  The Court first addresses Defendant's arguments as to the wire fraud charges (Counts 2-5) and then turns to the money laundering charges (Counts 7-9).

### A.    Wire Fraud Counts

Counts 2-5 of the Indictment charged that Defendant Chang committed wire fraud, in violation of 18 U.S.C. § 1343.  To convict a defendant of wire fraud, the jury must find beyond a reasonable doubt: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud."  *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).  A scheme to defraud is a scheme or plan "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1343; *see United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016).  "In order to prove a 'scheme to defraud,' the jury must find that the defendant employed 'material falsehoods.'"  *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (quoting *Neder v. United States*, 527 U.S. 1, 20 (1999)).  However, "the government is not required to prove any particular false statement was made" so long as the evidence shows that the scheme as a whole "was reasonably calculated to deceive."  *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003)); *accord United States v. Namvar*, 498 F. App'x 749, 751 (9th Cir. 2012).

As noted above, the Indictment alleges a "scheme to defraud [Cher Wang] and HOC4 by utilizing HOCA to solicit donations and short-term loans from C.W., as well as obtain money and real property from HOC4."  Indictment ¶ 9.  The scheme involved material misrepresentations in that Defendant Chang allegedly led Cher Wang and her agents "to mistakenly believe that HOCA

United States District Court
Northern District of California

was acting on behalf of and for the benefit of HOC4, when in truth and fact, HOCA was in no way affiliated with HOC4 and was controlled exclusively by Jonathan and Grace Chang." *Id.* ¶ 11. The Government sought to establish such misrepresentation through evidence that Mr. Chang represented "that the money received by [Home of Christ] Associates, Inc., was 'exclusively' for religious, non-profit purposes," and when in truth he used the funds for personal purchases. Opp. re Rule 29 Mot. at 13-14.

With regard to the second element of wire fraud, "the use of wire . . . to further the scheme," the Indictment identifies the four wire transfers that form the basis of each Count:

| Count | Date | Initiated From | To | Description |
|-------|------|----------------|-----|-------------|
| 2 | 02/11/2011 | TAIWAN | CALIFORNIA | Wire transfer in the amount of $15,975 from C.W.'s charitable foundation to HOC Associates, Inc.'s Wells Fargo Account *7117 |
| 3 | 03/22/2011 | TAIWAN | CALIFORNIA | Wire transfer in the amount of $15,975 from C.W.'s charitable foundation to HOC Associates, Inc.'s Wells Fargo Account *7117 |
| 4 | 04/12/2011 | TAIWAN | CALIFORNIA | Wire transfer in the amount of $15,975 from C.W.'s charitable foundation to HOC Associates, Inc.'s Wells Fargo Account *7117 |
| 5 | 05/10/2011 | TAIWAN | CALIFORNIA | Wire transfer in the amount of $15,975 from C.W.'s charitable foundation to HOC Associates, Inc.'s Wells Fargo Account *7117 |

*Id.* ¶ 26. These transfers were four instances of regular monthly donations made by Cher Wang's

Case No.: 16-cr-00047-EJD
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

United States District Court
Northern District of California

1   charitable foundation from October 2004 until 2011.  *Id.* ¶ 13.  The parties stipulated that the wires

2   were interstate wires.  Dkt. No. 209 (Tr. at 956-957).

3        Finally, to establish Mr. Chang's specific intent to defraud, the Government sought to

4   show that he engaged in "extensive efforts to conceal how HOC Associates, Inc. was spending

5   money" and that he named his organizations Home of Christ Associates, Inc. and Home of Christ

6   Associates, LLC in order to cause others to confuse them with HOC4.  Opp. re Rule 29 Mot. at

7   14-15.  The Government also introduced evidence that Mr. Chang consistently spent the money he

8   obtained through HOCA on personal purchases over the course of several years in order to show

9   lack of mistake.  *Id.* at 15.

10        Defendant attacks the jury's verdicts on the ground that the Government failed to introduce

11   evidence that Mr. Chang made any material misrepresentation that "induced" Ms. Wang to part

12   with money or property.  Rule 29 Mot. at 2.  Defendant's argument has three components: (1) that

13   the Government did not introduce evidence of any material misrepresentations made by Mr.

14   Chang to Cher Wang or any other representative of her charitable foundation, Faith Hope Love

15   Taiwan ("FHL Taiwan") regarding the monthly donations, *id.*; (2) that the Indictment identifies

16   Cher Wang as the victim but the Government failed to show that Cher Wang was the source of the

17   transferred funds, *id.* at 10-12; and (3) the Government cannot rely upon evidence of expenditures

18   by Mr. Chang to show that he defrauded HOC4 or Cher Wang, *see id.* at 14.

19        **i.   No Material Misrepresentation**

20        Defendant first argues that the Government failed to introduce evidence that Defendant

21   Chang made any material misrepresentations.  Rule 29 Mot. at 3-7.  Specifically, Defendant

22   maintains that "no witness testified that Mr. Chang, or someone acting on his behalf, made any

23   false statement to anyone at FHL Taiwan, to Cher Wang, Wenchi Chen, Timothy Chen, or to any

24   other person that would have induced monthly wire transfers to HOCA, Inc."  *Id.* at 4.

25        At the outset, the Court emphasizes that Defendant has not correctly stated the legal test for

26   a material misrepresentation.  Contrary to Defendant's assumption, the Government need not

27

28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

United States District Court
Northern District of California

show that any specific falsehood "induced" or otherwise "caused" the monthly transfers to be made.  Rule 29 Mot. at 5, 7.  The Ninth Circuit has squarely held that materiality "is an objective test, which looks at the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end."  *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (internal quotation marks and citations omitted).  "To be material a statement need only have the propensity or capacity to influence or affect [the relevant] decision."  *Lindsey*, 850 F.3d at 1013-14 (internal quotation marks and citation omitted).  Thus, "the government does not have to prove actual reliance upon the defendant's misrepresentations" in order to satisfy materiality."  *Id.* (quoting *Neder*, 527 U.S. at 25).  After all, wire fraud does not require a showing "that the scheme was successful or that the intended victim suffered a loss or that the defendants secured a gain."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986); *see also United States v. Rude*, 88 F.3d 1538, 1547 (9th Cir. 1996), *as amended on denial of reh'g* (Sept. 10, 1996) ("[T]he mail and wire fraud statutes do not proscribe only *successful* schemes.").

The Court also emphasizes again that "the government is not required to prove any particular false statement was made."  *Woods*, 335 F.3d 993, 998 (9th Cir. 2003)); *accord Namvar*, 498 F. App'x at 751.  The relevant inquiry is whether *the scheme as a whole* "was reasonably calculated to deceive."  *Id.*  Relatedly, moreover, statements need not be "literally false" to be misleading.  *Woods*, 335 F.3d at 998 (internal quotation marks and citation omitted).  "[D]eceitful statements of half truths . . . is actual fraud"; true statements may also deceive if made under circumstances that "convey [a] false and deceptive appearance."  *Id.* (internal quotation marks and citation omitted); *see also Lustiger v. United States*, 386 F.2d 132, 136 (9th Cir. 1967) ("While the statements in the advertising materials may not have been literally false, taken as a whole they were fraudulently misleading and deceptive.").

Finally, the Court notes that Defendant's argument focuses on the four monthly transfers specifically charged in Counts 2-5.  But the scheme alleged by the Government went beyond those transfers.  At trial, the Government introduced evidence of four categories of fraudulently obtained

United States District Court
Northern District of California

funds: (1) monthly donations made by Cher Wang through her foundation FHL Taiwan from 2004 to 2011; (2) $892,000 that Mr. Chang directed HOC4's bookkeeper to transfer from HOC4's accounts to HOCA's accounts; (3) two one-time donations made by Cher Wang: one of $2 million in 2005 and one of $250,000 in 2006; (4) a $3 million short-term loan by Cher Wang that was intended to help HOC4 in its efforts to purchase a new church building.  *See* Opp. re Rule 29 Mot. at 4-8.

Defendant maintains that any statements regarding the latter three categories are "distinct" from the monthly donations and hence are not relevant to Counts 2-5.  Rule 29 Mot. at 8-9.  That is incorrect.  Although "each use of the wires constitutes a separate violation of the wire fraud statute," *United States v. Garlick*, 240 F.3d 789, 793 (9th Cir. 2001), it is well-established that "'scheme to defraud' has a wider meaning than an individual act of fraud," *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).  The scheme "refers to the overall design to defraud one or many by means of a common plan or technique."  *Id.*  In fact, "the charged mailing or wire transmission need not be an essential element of the scheme, just a 'step in the plot.'"  *Garlick*, 240 F.3d at 795 (quoting *Schmuck v. United States*, 489 U.S. 705, 711 (1989)).  Any conduct that furthered the overall scheme to defraud underlying Counts 2-5 is relevant to establish that scheme.

Reviewing the trial record in light of these principles, the Court cannot agree with Defendant that the jury's finding of scheme to defraud is unsupported by any evidence.[1]  To begin

---

[1] The Government also argues that the jury's convictions could also have been based in Defendant Chang's failure to disclose material facts—namely, that Mr. Chang controlled HOCA and that the funds were used on personal expenses.  It is true that nondisclosure of a material fact can support a wire fraud charge, if there existed a duty to disclose that was breached by the person so charged.  *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016).  That duty can arise either out of a "formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise."  *Shields*, 844 F.3d at 823 (internal quotation marks and citation omitted).

In this case, the Government introduced evidence that Defendant Chang was an elder at HOC4 during the relevant periods and that, as such, he had a trusting relationship with both church donors and the church itself.  *See* Dkt. No. 237-1 (Tr. at 1339-40).  Based on that evidence, the jury could reasonably have concluded that this trusting relationship gave rise to a duty to disclose.  Defendant objects, however, that the Indictment did not adequately allege that Defendant Chang had a duty to disclose based on his position as an elder.  Reply re Rule 29 Mot. at 12 (citing

United States District Court
Northern District of California

with, the record contains ample evidence that, in 2004, Jonathan Chang formed and caused to be formed HOC Associates, Inc. and HOC Associates, LLC.  *See* Trial Exh. 52 (certified copies of Secretary of State documents for relevant entities); Trial Exh. 29 (California registration documents); Dkt. No. 237-1 (Tr. at 526-27).  HOC Associates, Inc. purported to be a charitable organization, *see* Trial Exh. 20, 21 (relevant IRS documents); HOC Associates, LLC was a for-profit entity.  Defendant does not contest these facts, or that he controlled the financial accounts of those organizations.

The evidence also supports the Government's contention that Mr. Chang played a significant role in coordinating Cher Wang's donations to HOC4, including the monthly donations and the other one-time donations.  Mr. Chang was an elder at HOC4 from at least 2002 to 2011.  Dkt. No. 237-1 (Tr. at 1339-40); Trial Exh. 194.  As such, he had management responsibilities at the church—including financial ones.  *Id.*  Furthermore, the Government offered evidence showing that Mr. Chang had solicited donations from Ms. Wang and assisted her in making them.  For instance, Trial Exhibit 7 is an email from Mr. Chang to Ms. Wang and another employee, stating, "I had several discussions with Cher in the last few months about her willingness of supporting Home of Christ (HOC) building project."  Dkt. No. 237-1 (Tr. at 46-48); Dkt. No. 242-2 at 20 (Trial Exh. 7).  The email went on to state that he had "arranged an alternative way for Cher to use" to bring the funding into the United States.  *Id.*  Similarly, Trial Exhibit 58 is an email from Mr. Chang with the subject line, "RE: Home of Christ donation."  Dkt. No. 242-2 at 14 (Trial Exh. 58).  Mr. Chang writes, in pertinent part, "When I talked to Cher, she promised $20,000/month for one year term."  *Id.*  Although these emails do not pertain directly to the monthly donations charged in Counts 2-5, they are probative of Mr. Chang's role in facilitating Ms. Wang's charitable contributions and his opportunity to direct them to HOCA.

The Government then introduced evidence sufficient to justify the jury's finding that Mr.

*United States v. Lonich*, No. 14-CR-00139-SI-1, 2016 WL 324039, at *8 (N.D. Cal. Jan. 27, 2016).  Therefore, without deciding the merits of that objection, the Court does not rely upon the Government's duty to disclosure theory in affirming the jury's verdict.

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

Chang materially misrepresented the nature of Home of Christ Associates, Inc. and Home of Christ Associates, LLC and how the monthly transfers to those organizations would be used.  For example, Trial Exhibit 19 is a set of receipts issued by Home of Christ Associates, Inc. to FHL Taiwan for its monthly contributions.  *See* Dkt. No. 242-2 at 1-12 ("Trial Exh. 19").  From at least 2008[2] through 2011, each receipt states that HOC Associates, Inc. is "a California Nonprofit Religious Corporation *exclusively* for the benefit of, to support the functions of and to support the purposes of The Home of Christ Church, as well as religious, Christ-centered ministries and missions." *Id.* at 8-12 (emphasis added); *see* Opp. re Rule 29 Mot. at 17.  The receipts are signed by Jonathan Chang.

Trial Exhibit 1125 contains similar statements regarding the purpose of HOC Associates, Inc.  Dkt. No. 242-2 at 18 ("Trial Exh. 1125").  The document is entitled "Oversight" and was given to participants in a meeting of HOC4's elders and deacons, who are responsible for managing the church's finances and other affairs.  *See* Dkt. No. 210 (Tr. at 1348-50), Dkt. No. 211 (Tr. at 1339-40, 1411-13).  It states that "HOC Associates, Inc. was formed under the California Nonprofit Religious Corporation to operate *exclusively* for the benefit of, to support the functions of, and to support the purposes of The Home of Christ Church, as well as religious, Christ-centered ministries and missions." Trial Exh. 1125.  It further states that "No part of the net earnings, properties, or assets of this corporation shall inure to the benefit of any private person, individual, member or director of this corporation." *Id.*  Although the document is not signed, Defendant does not dispute that the statements contained therein are attributable to HOC Associates, Inc. and, by extension, Jonathan Chang.  *See* Reply re Rule 29 Mot. at 6-7.

The Government showed that these statements were false or misleading in that many of the funds donated or loaned to HOCA were not used to benefit HOC4 but rather for Mr. Chang's personal enrichment.  Specifically, the Government introduced evidence that the funds were used to purchase: (1) a residential home in Cupertino, California purchased in 2006 for approximately

---

[2] One letter is dated 12/31/2007 but purports to concern the "year 2008." Dkt. No. 242-2 at 1-12

United States District Court
Northern District of California

1    $900,000 (the "Clematis" property), *see* Trial Exh. 75-76, Dkt. No. 210 (Tr. at 1181), Dkt. No.

2    212 (Tr. at 1522); (2) a residential home in Fremont, California purchased in 2008 for

3    approximately $800,000 (the "Blaney" property), *see* Trial Exh. 77, Dkt. No. 210 (Tr. at 1183-84),

4    Dkt. No. 212 (Tr. at 1522); (3) a Toyota Sequoia, *see* Dkt. No. 209 (Tr. at 1043-44); (4) personal

5    services such as medical expenses and expenses at the Cupertino Hills Racquet Club, *see* Dkt. No.

6    210 (Tr. at 1168-69); (5) an investment interest in a mobile home park (the "Santa Maria"

7    investment), *see* Dkt. No. 209 (Tr. at 1065-72); (6) timeshare interests in Lake Tahoe and Florida,

8    *see id.* (Tr. at 1076-77); and (7) payments on a Mercedes-Benz, *see id.* (Tr. at 1089).  Opp. re Rule

9    29 Mot. at 10-13.  Defendant does not cite any evidence that these purchases were made

10   exclusively for the benefit of HOC4.[3]  Accordingly, the jury reasonably concluded that the above

11   statements describing the purposes and activities of both HOC Associates Inc. and HOC

12   Associates LLC, were at best, deceptive "half-truths."  *See* Dkt. No. 192 at 19 (instructing the jury

13   that "[d]eceitful statements of half-truths may constitute false or fraudulent representations")

14        The Government also established that the representations were material.  Ms. Wang stated

15   that the mission of FHL Taiwan is to support missionary work by Christian missionaries.  Dkt. No.

16   237-1 (Tr. at 10-12, 15).  Of particular relevance here, Ms. Wang specifically testified that her

17   financial support for Home of Christ 4 was "to be used for missionary work and that, had she

18   "learned that [her] money was being used for things other than missionary work," she "would . . .

19   have stopped that donation."  Dkt. No. 237-1 (Tr. at 25-26).  She further testified that she did not

20   intend for or authorize her contributions "to benefit a particular individual in the church," or

21   otherwise to be used on items like a racket club, residential homes, automobiles, vacation homes,

22   and medical expenses.  *Id.*; *see also id.* (Tr. at 50, 75-78).  It is reasonable that, based on this

23   testimony and the jury's own objective evaluation of the statements, the jury found that the

24

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [3] Defendant points out that the Blaney property was rented to HOC4's youth pastor for a few

26   years.  *See* Reply re Rule 29 Mot. at 17 n.16; Opp. re Rule 29 Mot. at 11; Dkt. No. 208 (Tr. at 871-
     83).  Subsequently, however, it was rented to Mr. Chang's son and rent was collected by HOC

27   Associates, Inc.  Dkt. No. 210 (Tr. at 1151-55).

     Case No.: 16-cr-00047-EJD-1

28   ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

representations about HOCA are material to the decision whether to transfer money to HOCA.

Defendant makes much of the fact that, when asked at trial, Ms. Wang could not clearly recall whether FHL Taiwan made monthly donations in support of HOC4. *See* Rule 29 Mot. at 7. But Defendant does not actually dispute that FHL Taiwan made the monthly donations at issue. That fact was substantiated at trial by documentary evidence and testimony—including the receipts issued by HOC Associates, Inc. *See, e.g.*, Trial Exh. 19; Dkt. No. 207 (Tr. 556-58); Dkt. No. 209 (Tr. at 1042-43). Additionally, Ms. Wang testified unequivocally that she remembered donating to HOC4 for missionary work; she simply could not recall whether any of her donations were made on a monthly basis. Dkt. No. 237-1 (Tr. at 24-26). Ms. Wang explained that although she alone decided whether to donate to a particular cause or organization, she was too busy to personally check on her donations frequently. *Id.* (Tr. at 21-23). Under these circumstances, Ms. Wang's inability to recall the precise frequency of her donations does not undermine the jury's finding that she was defrauded.

Defendant similarly argues that Cher Wang never testified to reading and relying upon the receipts in deciding to donate to HOCA. Reply re Rule 29 Mot. at 4-5. As already discussed, however, the Government was not required to show such reliance. It is enough that a jury could deem the representations in the receipts *capable* of influencing the decision to part with money. And although the Government did not introduce evidence of instances when Mr. Chang verbally made the relevant misrepresentations to Cher Wang's or HOC4's agents, it is undisputed that the receipts were provided to FHL Taiwan and that the Oversight document was provided to HOC4's elders and deacons. That suffices to support an inference that the deceptive statements were purposefully made to FHL Taiwan and HOC4.

In sum, the Court finds that the jury's finding of a scheme to defraud is supported by adequate evidence in the record.

### ii. Failure to Show that Ms. Wang was the Source of the Funds Obtained

Defendant next argues that even if the Government adequately proved that FHL Taiwan

was defrauded, it did not show that Cher Wang was the source of FHL Taiwan's funds. This is problematic, Defendant says, for two reasons. Rule 29 Mot. at 11-13. First, Defendant maintains that the Indictment identified Cher Wang as the victim, and the Government may not attempt to prove a different scheme or victim from the one identified in the Indictment. *Id.* at 12 (citing *United States v. Milwitt*, 475 F.3d 1150, 1158 (9th Cir. 2007)). Second, Defendant objects that the entity deceived must also be the entity that did or would part with property. *Id.* at 11 (citing *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989)).

Neither concern is implicated here, however. To begin with, the Court rejects Defendant's contention that "the government conflated Cher Wang with FHL Taiwan, without any supporting evidence." Rule 29 Mot. at 12. Ms. Wang herself testified that FHL Taiwan is her personal foundation. Dkt. No. 237-1 (Tr. at 13); *see also* Trial Exh. 151 (articles of incorporation). Melody Chao, an employee of Cher Wang who was handled Ms. Wang's personal banking and financial activity, testified to the same. Dkt. No. 207 (Tr. at 518-20, 558) (referring to FHL Taiwan as Ms. Wang's "personal foundation"); *see also id.* (Tr. at 565) (testifying that Cher Wang approved donation proposals sent to FHL Taiwan). Ms. Chao further testified that FHL Taiwan made monthly donations in support of HOC4, and that the organization that issued the donation receipt changed from "Home of Christ church" to "HOCA" around 2007. *Id.* (Tr. at 557-58, 570-71). And although not directly implicated by Counts 2-5, Ms. Chao and Ms. Wang likewise testified that Ms. Wang controlled Panda Networks and S3 Graphics, two other entities through which Ms. Wang made charitable contributions in support of HOC4. *See* Dkt. No. 237-1 (Tr. at 8-11, 15-17); Trial Exh. 152; Dkt. No. 207 (Tr. at 529-522, 552). Hence, the jury did not need to "guess" that FHL Taiwan's funds belonged to and were controlled by Cher Wang, Rule 29 Mot. at 12; those facts were sufficiently established by the evidence at trial. It follows that there is no divergence between the entity deceived and the entity that parted with money.

Moreover, this is not a case in which the Government "attempted to prove an entirely different case under an entirely different theory" from the one initially charged. *Milwitt*, 475 F.3d

United States District Court
Northern District of California

at 1158 (The Government's theory shifted from one in which Milwitt intended to defraud his law clients from one in which he intended to defraud his clients' creditors.).  The Indictment made clear that the wires charged in Counts 2-5 were transfers "from C.W.'s charitable foundation." Indictment ¶ 26.  Additionally, in describing the overall scheme to defraud, the Indictment alleged that "C.W.'s charitable foundation provided regular electronic payments of between $15,000 and $20,000 to Wells Fargo bank accounts controlled by Jonathan Chang and Grace Change" and that these "regular monthly donations from C.W.'s foundations . . . had been intended for HOC4 and its ministry." *Id.* ¶ 13.  The Indictment also expressly alleged that the "false and misleading representations" were made "to C.W., and *agents* for C.W." *Id.* ¶ 11.  Thus, Defendant's claim that "[t]he Indictment does not name CW's charitable foundations . . . as victims" is simply without merit.  Rule 29 Mot. at 12.

Defendant's second argument in favor of a judgment of acquittal fails.

### iii.    Evidence of Expenditures Do Not Establish Fraud

Last, Defendant contends that the Government cannot rely upon evidence of expenditures that Mr. Chang made to show that he defrauded HOC4 or Cher Wang because "a fraud is complete once the funds are obtained."  Rule 29 Mot. at 14.  Defendant emphasizes that the crime charged is fraud, "theft, embezzlement or tax fraud." *Id.* at 15.

This argument misunderstands the purpose of the evidence regarding Mr. Chang's use of HOCA funds for personal expenses.  As explained above, the misuse of funds establishes the falsity of the representation in the receipts that HOC Associates, Inc. "operate[s] *exclusively* for the benefit of, to support the functions of, and to support the purposes of The Home of Christ Church." *See United States v. Brutzman*, 731 F.2d 1449, 1451–52 (9th Cir. 1984) ("The misuse of the funds directly established the fraudulent nature of the scheme."), *overruled on other grounds by United States v. Charmley*, 764 F.2d 675, 677 n. 1 (9th Cir. 1985).  It is also probative of Mr. Chang's specific intent to defraud.  *See United States v. Booth*, 309 F.3d 566, 575 (9th Cir. 2002) ("There was evidence that the two [defendants] received money, represented to be refundable,

from their clients that was purportedly for securing leases, but they promptly spent the money on themselves instead.").  Defendant is therefore incorrect that "an irregular use of the funds obtained by donations" has no relevance to the wire fraud charges.

***

Having rejected Defendant's attempts to challenge the jury's findings that the elements of wire fraud were met, the Court DENIES Defendant's motion for a judgment of acquittal as to Counts 2-5.

### B.    Money Laundering Counts

Defendant also seeks a judgment of acquittal as to his convictions for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 7-9).  To sustain a conviction under 18 U.S.C. § 1956(a)(1)(B)(i), the jury must find that "(1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew "that the transaction was designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011); *accord United States v. Smith*, No. 19-10237, 2020 WL 5054867, at *1 (9th Cir. Aug. 27, 2020).  Here, the Indictment charged Defendant Chang with conducting the following financial transactions, "knowing that those transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of unlawful activity:"

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 7 | 03/30/2012 | $5,000.00 | Transfer from HOC Associates, Inc. Wells Fargo account *7117 to HOCCC's Wells Fargo account *8499. |
| 8 | 10/24/2012 | $19,000.00 | Transfer from HOC Associates, Inc. Wells Fargo account *7117 to HOCCC's Wells Fargo account *9314 |

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

15

United States District Court
Northern District of California

| 9 | 10/25/2012 | $4,000.00 | International wire transfer from HOC Associates, Inc. Wells Fargo account *9314 to the Taiwan-based HSBC account of RuWu Charng *1406. |
|---|---|---|---|

*Id.* ¶ 30.

Defendant challenges the jury's convictions on two grounds.  First, Defendant contends that if his wire fraud convictions cannot stand, the money laundering convictions must also be reversed because the wire fraud convictions are necessary to establish that the relevant transactions involved the "proceeds of unlawful activity."  But of course, the Court has affirmed the wire fraud convictions.  Accordingly, without deciding whether Defendant is correct on the law—the Government argues that he is not, *see* Opp. re Rule 29 Mot. at 22—the Court rejects this attack on the money laundering convictions.

Second, Defendant argues that the evidence at trial was insufficient to prove that the transactions were "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  *Wilkes*, 662 F.3d at 545; *see* Rule 29 Mot. at 15.  In particular, Defendant emphasizes that the transfers identified in Counts 7-9 were "open, notorious, typical, and part of an 'easy-to-follow' trail."  Rule 29 Mot. at 17.  This, Defendant says, precludes a finding of concealment.  *Id.* (citing *Wilkes*, 662 F.3d at 545-546 ("[W]here a defendant takes no steps to disguise or conceal the source or destination of the funds, leaving an easy-to-follow trail in moving money around, those 'transactions conspicuously lack the "convoluted" character associated with money laundering.")).

But Defendant's characterization of the transfers as "open," "notorious," "typical," and "easy-to-follow" simply begs the question.  At trial, the Government introduced evidence in support of its allegation that the transfers were made at least in part to conceal that money in HOC Associates, Inc.'s account had been donated to support HOC4, in order to use the money improperly on personal expenses.  Although Defendant has posited innocent explanations for the transfers, it cannot be said that the jury's findings of money laundering were unreasonable or

1   devoid of factual support.

2          For instance, Count 7 is the transfer of $5,000 from the HOC Associates, Inc. account to an

3   account associated with Home of Christ Christian Center ("HOCCC"), another entity created by

4   Jonathan Chang.  There were various pieces of evidence at trial suggesting that HOCCC was not a

5   legitimate enterprise, including that Defendant Chang used Eric Maxwell's identity without his

6   permission in order to gain HOCCC a favorable tax status with the California Franchise Tax

7   Board.  *See* Dkt. No. 208 (Tr. at 877-85); Trial Exh. 179.  In so doing, moreover, Mr. Chang made

8   false representations about Mr. Maxwell.  Dkt. No. 208 (Tr. at 877-85).  In addition, the

9   Government's expert witness, Agent Kikugawa, identified the source of the $5,000 as donations

10  from FHL Taiwan.  Dkt. No. 210 (Tr. at 1192-93).  While Defendant may continue to offer

11  alternative explanations for the transfer to HOCCC, there was sufficient evidence to support the

12  jury's conclusion that it was an effort to conceal the true source of the money.

13         The same is true of Counts 8 and 9, though the evidence is less robust.  At trial, Agent

14  Kikugawa testified that both the $19,000 and the $4,000 originated as FHL Taiwan donations.

15  Dkt. No. 210 (Tr. at 1194-96); Trial Exh. 82.  It is suggestive, moreover, that the transactions were

16  made on consecutive days, with funds going into one account and promptly leaving it.  *United*

17  *States v. Keister*, 24 F.3d 251 (9th Cir. 1994) (affirming that "the transfers of money between

18  various Keister-controlled entities alone is sufficient to support a jury finding of money

19  laundering").  Meanwhile, Defendant does not explain why the $4,000 transfer was not made

20  directly from HOC Associates, Inc.'s account to RuWu Charng's account.  Under these

21  circumstances, it was not irrational for the jury to find that the transfers were made for the purpose

22  of concealment.

23         Thus, the Court concludes that sufficient evidence supports Defendant's convictions for

24  money laundering.  Defendant's motion for a judgment of acquittal as to Counts 7-9 is DENIED.

25  **III.   MOTION FOR A NEW TRIAL**

26         Having denied Defendant's motion for a judgment of acquittal as to all 5 convictions, the

27

28  Case No.: 16-cr-00047-EJD-1
    ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
    TRIAL

United States District Court
Northern District of California

1    Court now turns to Defendant's motion for a new trial.  Federal Rule of Criminal Procedure 33

2    provides that "the court may vacate any judgment and grant a new trial if the interest of justice so

3    requires."  Fed. R. Crim. P. 33(a).

4        Defendant moves for a new trial on several grounds.  As the Court will explain, none of

5    Defendant's argument warrant a new trial, wherefore his motion must be DENIED.

6        **A.    Sufficiency of the Evidence**

7        First, Defendant renews his contention that the evidence introduced at trial is insufficient

8    to justify the jury's verdicts, which the Court has rejected under Federal Rule of Criminal

9    Procedure 29.  Rule 33 Mot. at 1-2.

10        "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the

11   verdict, the evidence preponderates sufficiently heavily against the verdict that a serious

12   miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit

13   the issues for determination by another jury."  *United States v. A. Lanoy Alston*, 974 F.2d 1206,

14   1211–12 (9th Cir. 1992) (internal quotation omitted).  The principal difference between the Rule

15   29 standard for evaluating a claim of insufficient evidence and the Rule 33 standard for the same

16   is that under the latter, the district court "need not view the evidence in the light most favorable to

17   the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the

18   witnesses."  *Id.*  The district court's power to grant a motion for a new trial is thus broader than its

19   power to grant a motion for judgment of acquittal.  *Id.*

20        Nevertheless, the Ninth Circuit has emphasized that a motion for a new trial "should be

21   granted 'only in exceptional cases in which the evidence preponderates heavily against the

22   verdict.'"  *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984) (internal quotation omitted).

23   Again, the court must be persuaded that "a serious miscarriage of justice may have occurred,"

24   *Alston*, 974 F.2d at 1211–12, and the defendant has the burden of demonstrating that standard is

25   met, *see United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).

26        Defendant Chang has not carried that burden here.  Though the Rule 33 standard does not

27

28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

United States District Court
Northern District of California

1    require a court to view the evidence in the light most favorable to the Government, the Court

2    remains satisfied that the verdict is supported by the weight of the evidence.  The evidence in this

3    case was substantial; indeed, it went beyond the testimony and exhibits specifically described by

4    the Court above.  Moreover, though Defendant Chang maintains that the facts put forth by the

5    Government are equally consistent with innocent purposes, he did not offer evidence contesting

6    those facts or undermining the credibility of the Government's witnesses.  Accordingly, the Court

7    does not believe that "the evidence preponderates sufficiently heavily against the verdict" such

8    that "a serious miscarriage of justice may have occurred."

9            Defendant's motion for a new trial based on insufficiency of the evidence is, therefore,

10   DENIED.

### B.    Evidentiary Errors

12           Defendant also argues that various evidentiary errors undermine the validity of the

13   verdicts.  Rule 33 Mot. at 3.  The mere existence of evidentiary errors at trial is not a sufficient

14   basis for a new trial.  Evidentiary errors may justify a new trial only if—considered individually or

15   together—they "substantially affect[ed] the fairness of the trial" and were of "such prejudicial

16   harm as to require a new trial."  *United States v. Medina-Gasca*, 739 F.2d 1451, 1454 (9th Cir.

17   1984); *see also United States v. Tory*, 52 F.3d 207, 211 (9th Cir. 1995).  On the other hand, if "it is

18   more probable than not that the error did not materially affect the verdict," the error will be

19   deemed harmless.  *United States v. Bailey*, 696 F.3d 794, 803 (9th Cir. 2012).

20           Defendant asserts two evidentiary errors.  First, he argues that the Government's expert,

21   Agent Carlene Kikugawa, should not have been permitted to testify under *Daubert v. Merrell Dow*

22   *Pharm., Inc.,* 509 U.S. 579 (1993).  Second, Defendant renews his objection to the admission of

23   certain documents as being seized pursuant to an overbroad search warrant, in violation of the

24   Fourth Amendment to the U.S. Constitution.  As set forth below, the Court finds no error and

25   therefore DENIES Defendant's motion on these grounds.

### iv.    *Daubert* Challenge to Government's Expert

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
TRIAL

1    In his pretrial Motion in Limine No. 3, Defendant moved to exclude portions of Agent

2    Kikugawa's proffered expert testimony under Federal Rule of Evidence 702 and *Daubert,* 509

3    U.S. 579.  Dkt. No. 119 ("MIL No. 3").  Agent Kikugawa is the Government's expert witness; she

4    performed a forensic analysis of how funds moved through the various different HOC Associates,

5    Inc. and HOC Associates, LLC accounts, tracing where they originated and how they were spent.

6    Defendant asserted that Agent Kikugawa's testimony failed to meet the threshold for admissibility

7    because: "(1) significant portions of her report and conclusions combine and conflate HOCA, Inc.

8    and HOCA, LLC in a misleading and inaccurate way; (2) parts of Agent's Kikugawa's report

9    inappropriately include assumed facts or commentary on her personal beliefs about the facts; (3)

10   Agent Kikugawa's application of the Lowest Intermediate Balance Method ["LIBM"] is invalid,

11   . . . ; and (4) her conclusions about the source of funds for properties lack appropriate tracing."  *Id.*

12   at 2. The Court rejected these arguments and denied the motion in limine.  Dkt. No. 160.  As a

13   result, Agent Kikugawa was permitted to testify and did testify as proposed.

14   Defendant now renews the above objections, arguing that the "denial of Mr. Chang's

15   motion to exclude her testimony was an error warranting a new trial."  Rule 33 Mot. at 3-4.

16   Having reviewed the parties' briefing and the trial record, the Court remains convinced that Agent

17   Kikugawa's testimony was admissible.  Pursuant to the Supreme Court's decision in *Daubert*,

18   Federal Rule of Evidence 702 requires a district court to assure that assure that the expert

19   testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Primiano v.*

20   *Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (quoting *Daubert*, 509 U.S.

21   at 597).  In evaluating proffered expert testimony, however, the district judge is "a gatekeeper, not

22   a fact finder."  *Id.*  "When an expert meets the threshold established by Rule 702 as explained in

23   Daubert, the expert may testify and the jury decides how much weight to give that testimony."  *Id.*

24   Hence, "[s]haky but admissible evidence is to be attacked by cross examination, contrary

25   evidence, and attention to the burden of proof, not exclusion."  *Pyramid Techs., Inc. v. Hartford*

26   *Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014).

27

28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

United States District Court
Northern District of California

1    As the Court held in denying Defendant's Motion in Limine No. 3, Agent Kikugawa

2    possesses the necessary qualifications to testify as an expert and her financial analysis was based

3    on "reliable principles and methods, reliably applied to the facts of the case."  *See* Dkt. No. 160 at

4    1.  She is a certified public accountant ("CPA") and a certified fraud examiner; she is also certified

5    in financial forensics.  Dkt. No. 209 (Tr. at 1002-04).  At trial, Agent Kikugawa testified that the

6    Lowest Intermediate Balance Method is a "generally accepted tracing method" in the field of

7    forensic accounting and that the method assumes that "other funds"—i.e., funds other than HOC4

8    donor funds—are expended first.  Dkt. No. 209 (Tr. at 1120-22).  She then explained in detail her

9    tracing of the seven separate accounts held by HOC Associates, Inc. and HOC Associates, LLC,

10   including her rationale for consolidating the two entities during parts of the analysis, *see* Dkt. No.

11   210 (Tr. at 1197, 1204).

12   Though Defendant believes Agent Kikugawa's analysis is flawed, those objections go to

13   the weight of her testimony, not its admissibility.  And indeed, Defendant had the opportunity to

14   cross-examine Agent Kikugawa at length about the flaws he sees, *see* Dkt. No. 210 (Tr. at 1205-

15   1214).  Defendant also offered the rebuttal testimony of their own expert, Dr. Stephen Boyles.  *See*

16   Dkt. Nos. 211-12.  Thus, Defendant's arguments against the validity of Agent's Kikugawa's

17   opinions have been put before the jury and, apparently, rejected.

18   Because the Court affirms its decision to admit the testimony of Agent Kikugawa, a new

19   trial is not necessary.

20   **v.    Admission of Exhibits in Violation of the Fourth Amendment**

21   Nor does the Court find error in its prior decision to admit certain documents in the Bates

22   range starting with "IB" (the "IB series" exhibits).  *See* Rule 33 Mot. at 4-5.  Prior to trial, upon

23   Defendant's Motion to Suppress, Dkt. No. 93, the Court ruled that any evidence collected "solely

24   under" Category 10 of the relevant search warrant could not be introduced at trial, but otherwise

25   denied the motion.  *See* Dkt. No. 100.  In other words, though the Court found Category 10 to be

26   impermissibly overbroad, the Court declined to suppress any evidence seized under at least one

27

28   Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
TRIAL

1    other category of the search warrant.  *Id.* at 3.  Defendant subsequently filed a motion in limine

2    asking the Court to reconsider its prior ruling and exclude IB series documents that fell within

3    categories other than Category 10.  Dkt. No. 129 (Motion in Limine No. 6).  The Court deferred

4    ruling on the admissibility of those materials until trial, where it considered Defendant's

5    objections on a case by case basis and admitted the exhibits discussed in the instant Motion for a

6    New Trial.  Dkt. No. 160 at 2.

7           Specifically, Defendant now argues that the Court erred in admitting the following exhibits

8    at trial: Trial Exhibits 54 (IB-24), 1 (IB-32, IB-44), 193 and 196 (IB-52), and 194 (IB-50).  Each

9    contested exhibit falls within at least one category other than Category Ten of the search warrant,

10   *see* Opp. re Rule 33 Mot. at 3-4, and Defendant does not contest that fact.  Instead, in his motion,

11   Defendant reiterates his belief that "all documents in the IB-series should have been suppressed."

12   Rule 33 Mot. at 5.  In so doing, however, Defendant offers no new argument.  The Court therefore

13   sees no cause to revisit its order regarding the Motion to Suppress and trial rulings as to the

14   contested exhibits.  Defendant's motion for a new trial on this ground is DENIED.

15          **C.     Variance from the Indictment**

16          Defendant next argues that the evidence offered at trial "proved facts materially different

17   from those alleged in the Indictment" and that there has thus been a "fatal variance" from or

18   "constructive amendment" of the Indictment, warranting a new trial.  Rule 33 Mot. at 5.

19          Pursuant to the Fifth Amendment to the U.S. Constitution, a defendant has a "right to stand

20   trial only on charges made by a grand jury in its indictment."  *United States v. Adamson*, 291 F.3d

21   606, 614 (9th Cir. 2002) (internal quotation marks and citation omitted).  "After an indictment has

22   been returned and criminal proceedings are underway, the indictment's charges may not be

23   broadened by amendment, either literal or constructive, except by the grand jury itself."  *Id.* at

24   614.  Differences between the presentation of evidence at trial and the allegations in an indictment

25   may qualify as a "variance" or a "constructive amendment."  *United States v. Hartz*, 458 F.3d

26   1011, 1020 (9th Cir. 2006).  A constructive amendment "occurs when the charging terms of the

27

28   Case No.: 16-cr-00047-EJD-1
     ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

United States District Court
Northern District of California

indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them," and a variance "occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* Although "[t]he line that separates a constructive amendment from a variance is not always easy to define," the difference is significant: A constructive amendment typically requires reversal, while a variance does not unless "it prejudices a defendant's substantial rights." *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014); *see* Fed. R. Crim. P. 52(a).

In this case, the Court sees no material variance between the Indictment and the proof at trial, much less one that amounts to a constructive amendment.

First and foremost, Defendant's motion is based on his view that "the content of the misrepresentation alleged in Mr. Chang's Indictment materially differed from the 'misrepresentation' introduced at trial (ie, no misrepresentation at all)." Rule 33 Mot. at 5. Yet, Defendant has not shown that material difference exists. As noted above, the Indictment charges Defendant with falsely representing that "HOCA was acting on behalf of and for the benefit of HOC4, when in truth and fact, HOCA was in no way affiliated with HOC4 and was controlled exclusively by Jonathan and Grace Chang." Indictment ¶ 11. Defendant does not identify an alternative misrepresentation that the Government attempted to prove. *See Adamson*, 291 F.3d at 614 (finding a variance where the indictment was returned on the theory that the defendant misrepresented "*the fact that*" the computer servers had been upgraded, but "the evidence tended to show that Hardwarehouse had misrepresented *how* the servers had been upgraded (i.e., with an unauthorized password-disabled copy of SS—Config)") (emphasis in original). Instead, he simply argues that the "government did not prove that Mr. Chang made statements (misrepresentative or otherwise) to Cher Wang." Rule 33 Mot. at 11. Thus, Defendant's argument is not that the prosecution's theory at trial *differed* from the theory alleged in the Indictment; rather, it is another attack on the *sufficiency* of the prosecution's proof. The Court has already considered and rejected the Defendant's score, and does so again here.

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

23

In addition, Defendant points to various other allegations in the Indictment that he believes "were never proven at trial."  Rule 33 Mot. at 7.  Some of these allegations were in fact established by sufficient evidence, as discussed in the above ruling on Defendant's Motion for Judgment of Acquittal.  For instance, the Court found that the receipts issued by HOC Associates, Inc. and signed by Jonathan Chang adequately proved that he "made specific false and misleading representations to C.W., and agents for C.W."  Indictment ¶ 11; *see supra* Part II.A.i.  And although the jury was not persuaded, the Government did attempt to prove other allegations, such that Jonathan and Grace Chang conspired with each other in the scheme to defraud.  *See* Rule 33 Mot. at 7 ("A conspiracy between Jonathan and Grace Chang was not proven at trial."); Indictment ¶ 10.

Nevertheless, it is arguably true that the Government did not attempt to substantiate all the allegations contained in the Indictment.  However, the Supreme Court has explicitly held that it does not "constitute[s] an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it."  *United States v. Miller*, 471 U.S. 130, 136 (1985)).  The Court has already concluded that the Government brought sufficient evidence to prove the scheme to defraud charged in the Indictment.  Thus, as in *United States v. Miller*, the defendant's "complaint is not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary."  471 U.S. at 140.  Such a divergence does not warrant a new trial.

**D.    Closing Argument Argued Facts Not in Evidence**

Next, Defendant takes issue with the Government's closing arguments.  According to Defendant, "both prosecutors referenced information that had never been admitted at trial."  Rule 33 Mot. at 10-11.  Defendant contends that their "comments taken together were improper and infected the trial with unfairness that denied Mr. Chang due process."  *Id.* at 13.

Having reviewed the allegedly misleading comments, the Court finds no impropriety. First, Defendant says that AUSA Griswold told the jury that HOC4 was paying rent [on the

1   Lomita property] to Jonathan Chang and Weilin Chang" after 10 years despite no testimony to that

2   effect.  Rule 33 Mot. at 11; *see* Dkt. No. 214 (Tr. at 1779).  As the Government points out,

3   however, Michelle Wang (who was a deacon at HOC4 beginning in 1999 or 2000) testified that

4   that when she left the church in December 2015, it was paying rent to HOC Associates Inc., and

5   that "the payment of rent only began in July or August of 2015."  *See* Dkt. Nos. 210-11 (Tr. at

6   1338-41; 1425-26).  This was ten years after Ms. Wang said the church agreed to rent the property

7   from HOCA and ten years after HOCA purchased the Lomita property.  *See* Dkt. No. 210 (Tr. at

8   1346-47); Trial. Exh. 32 (grant deed for Lomita Way).  Michelle Wang's testimony thus

9   substantiates AUSA Griswold's remark.

10       Second, Defendant objects to AUSA Griswold's statement that "Cher Wang testified that

11   she expected to be paid back" on the $3 million loan that she made for the purchase of a new

12   church house.  Rule 33 Mot. at 12; *see* Dkt. No. 214 (Tr. at 1781).  Defendant says that "[w]hat

13   Cher Wang actually testified about was the difference between a gift and a loan generically: 'A

14   gift is the gift.  Loan is to be returned.'"  Rule 33 Mot. at 12; *see* Dkt. No. 237-1 (Tr. at 59).  But it

15   is not misconduct for the Government to argue reasonable inferences based on the record.  *See*

16   *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).  Even if the only evidence

17   supporting AUSA's Griswold statement was Ms. Wang's general testimony about loans, it is

18   reasonable to infer that she expected to be paid back for the specific $3 million loan at issue.

19       Third, Defendant contends AUSA Griswold misled the jury by telling them "Cher Wang

20   testified that she thought" a $250,000 donation "was going to the church."   Rule 33 Mot. at 12;

21   *see* Dkt. No. 214 (Tr. at 1785).  Contrary to the Defendant's claim, though, AUSA Griswold

22   statement accurately reflects the testimony at trial.  When asked about the $250,000 check, Ms.

23   Wang testified as follows:

24           Q. Do you know why -- when you signed this check and you saw
             "Home of Christ," who did you think was receiving this check?
25
             A. The church.
26
             …
27
     Case No.: 16-cr-00047-EJD-1
28   ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL

United States District Court
Northern District of California

Q. You thought the church was receiving this check when you signed it; is that correct?

A. Yes.

Q. And by "church," are you referring to Home of Christ 4?

A. Yes.

Dkt. No. 237-1 (Tr. at 33).

Fourth, Defendant says that AUSA Delahunty stated without evidence that "[t]he reason why the church couldn't be sold is because Jonathan proposed that HOC4 enter into an agreement to swap the use of the two buildings for ten years." Rule 33 Mot. at 12; *see* Dkt. No. 214 (Tr. at 1864-65). Although Defendant contends the true reason the church could not be sold was "internal disputes at the church," Rule 33 Mot. at 13, AUSA Delahunty's alternative theory was not devoid of support. Michelle Wang testified to that proposal being presented and discussed at a meeting of elders and deacons. *See* Dkt. No. 211 (Tr. at 1343-46). That evidence sufficed to allow the Government to argue their theory to the jury.

Fifth, Defendant contends that Cher Wang did not "testify that she didn't want her money used on investments from Mr. and Mrs. Chang," as AUSA Delahunty stated during his closing arguments. Rule 33 Mot. at 13; *see* Dkt. No. 214 (Tr. at 1865). Although Ms. Wang did not make that overarching statement, she testified that she did not want her money used on the specific types of purchases the Mr. Chang allegedly made (e.g., "a racket club," "automobiles," "medical expenses," "Jonathan and Weil-Lin Chang's daughter's wedding expenses," "vacation homes or interest[s] in a vacation home," "credit card bills," "residential properties." *See* Dkt. No. 237-1 (Tr. at 73-78). It was not improper for AUSA Delahunty to summarize her testimony as he did.

Sixth, Defendant objects to a discussion of a property known as "Rae Lane." Rule 33 Mot. at 13; *see* Dkt. No. 214 (Tr. at 1870). Specifically, AUSA Delahunty told the jury that there was a "refinance of the Rae Lane property" "in the last couple years." Rule 33 Mot. at 13; *see* Dkt. No. 214 (Tr. at 1870). Again, despite Defendant's contention that "this was not introduced into evidence," the Government has cited the relevant evidence: Agent Kikugawa testified to money

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

1   coming the HOCA bank accounts from the refinance of Rae Lane.  *See* Dkt. No. 209 at 1130; *see*

2   *also* Trial Exh. 71.

3        In sum, then, the Court finds that the Government did not make improper remarks in its

4   closing argument.

5        In any event, even if the prosecution's closing argument had misrepresented certain

6   individual pieces of testimony, "[e]very slight excess of a prosecutor does not require that a

7   verdict be overturned and a new trial ordered."  *United States v. Yarbrough*, 852 F.2d 1522, 1539

8   (9th Cir. 1988).  "The test for determining whether prosecutorial misconduct requires a mistrial is

9   whether the remarks were improper and whether they prejudicially affected the substantial rights

10  of the defendant."  *Id.*  In this case, the facts the Government allegedly mispresented were

11  ancillary and not integral to the convictions on Counts 2-5 and 7-9.  Given the other evidence at

12  trial, it cannot be said that any misstatements about the facts discussed in Defendant's motion

13  were prejudicial.

14       What is more, the jury was instructed that "statements . . . and "arguments by the lawyers

15  are not evidence."  Dkt. No. 192 at 7 (Jury Instruction No. 6).  The jury was specifically instructed

16  "what the lawyers have said in their opening statements and their closing arguments . . . is not

17  evidence" and that "[i]f the facts as [the jury] remember[s] them differ from the way the lawyers

18  state them, [the jury's] memory of them controls."  *Id.*  It is well-established that juries are

19  presumed to follow jury instructions, *In re Dan Farr Prods.*, 874 F.3d 590, 595 (9th Cir. 2017),

20  and Defendant has done nothing to rebut that presumption.

21       Accordingly, for the foregoing reasons, the Court finds that the Government did not

22  engage in improper closing argument warranting merit a new trial on the merits.

23       **E.    Instructional Error**

24       Defendant's final argument for a new trial is made on the ground that this Court erred in

25  instructing the jury on the elements of wire fraud.  Def. Supp. Br. at 1.

26       It is undisputed that pursuant to the Ninth Circuit's March 20, 2020 decision in *United*

27

28

*United States District Court*
*Northern District of California*

*States v. Miller*, this Court improperly instructed the jury on definition of "intent to defraud" for purposes of wire fraud. 953 F.3d 1095 (9th Cir. 2020). *In Miller*, the Ninth Circuit held the relevant intent required is the intent to "deceive and cheat" rather than the intent to "deceive or cheat." *Id.* at 1102-03. That is, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *Id.* at 1101. Over the Defendant's objection, *see* Dkt. No. 124 (Instruction No. 47), this Court gave the Ninth Circuit Model Jury Instructions, which incorrectly defined intent to defraud as "the intent to deceive or cheat." *See* Dkt. No. 192 at 19 (Jury Instruction No. 18).

A motion for a new trial under Rule 33 may be granted for failure to give proper jury instructions. However, an instructional error does not automatically warrant a new trial: The defendant must show that the error affects substantial rights. *See* Fed. R. Crim. P. 52(a); *Miller*, 953 F.3d at 1103. "[A]n error in misdescribing or omitting an element of the offense in a jury instruction is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). The Ninth Circuit has made clear that when applying this standard, a court should consider "the jury instructions and the trial record as a whole." *United States v. Espino*, 892 F.3d 1048, 1053 (9th Cir. 2018). Where the evidence actually presented at trial and "other language in the jury instructions" assures the court that the jury could not have based its verdict on the erroneous language in the instruction, the Ninth Circuit has found the error to be harmless. *Miller*, 953 F.3d at 1103; *see also Espino*, 892 F.3d at 1053; *United States v. Perez*, 116 F.3d 840, 847 (9th Cir. 1997) ("Even though an element of the offense is not specifically mentioned [in the jury instructions], it remains possible the jury made the necessary finding.").

Here, the Court concludes that although it incorrectly instructed the jury that an intent to defraud is "an intent to deceive or cheat," that error was harmless. *Miller* itself compels this

United States District Court
Northern District of California

finding.  *See* 953 F.3d at 1103.  The defendant in that case raised the defense that he, "while intending to deceive, did not intend to cheat."  The Ninth Circuit was nevertheless "persuaded, based on other language in the jury instructions, that there is no way the jury made this determination."  *Id.*  "Most importantly," the court explained,

> the district court's instruction on the 'scheme to defraud' element of the wire fraud counts told the jury that it must find that Miller "knowingly engaged in a scheme or plan to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises."  If the jury had believed that there was any inconsistency between this language and the subsequent language about "deceive or cheat," they undoubtedly would have sought further instruction, which they did not.

*Id.*

A nearly identical instruction regarding "scheme to defraud" was given by the Court in this case.  *See* Dkt. No. 192 (Jury Instruction No. 18).  The instruction stated that "the government must prove" that Defendant "knowingly participated in, devised, or intended to devise (a) a scheme or plan to defraud, or (b) a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations promises, or omitted facts."  *Id.*  Under this instruction, the jury necessarily found beyond a reasonable doubt that the scheme involved deception as well as the deprivation of money or property.  The jury was also instructed to find that the false statements made "as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property."  *Id.*  This materiality requirement further ensured that the false statements had to target a person's money or property.  Thus, as in *Miller*, the jury instructions as a whole ensured that the jury did not convict Mr. Chang of deception alone.

Moreover, in light of the record in this case, the likelihood that Mr. Chang was convicted for having an intent to deceive without the intent to cheat is far less than in *Miller*.  Defendant Chang says that "the jury could have convicted Mr. Chang on the theory that he intended to deceive Cher Wang or FHL Taiwan . . . and then later decided to embezzle funds."  Def. Supp. Br. at 5.  While that is technically possible, Defendant Chang never presented that defense at trial.  It

Case No.: 16-cr-00047-EJD-1
ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

1    is therefore implausible that the jury would have convicted him on that basis.

2         For both these reasons, the Court concludes that the jury would have returned the same

3    verdict, if properly instructed.

4                                                           ***

5         With that, the Court rejects all of Defendant's arguments in support of his request for a

6    new trial under Rule 33.  The motion is therefore DENIED.

7    **IV.    CONCLUSION**

8         For the foregoing reasons, the Court DENIES Defendant's Motion for Judgment of

9    Acquittal and Motion for a New Trial.  Accordingly, the Court hereby vacates the September 28,

10   2020 status hearing and sets Defendant's sentencing for **November 9, 2020 at 1:30 p.m**.  If

11   necessary, the parties may request an intervening status hearing.

12

13        **IT IS SO ORDERED.**

14

15   Dated: September 24, 2020

16                                    _____

17                                    EDWARD J. DAVILA
                                      United States District Judge

18

19

20

21

22

23

24

25

26

27
     Case No.: 16-cr-00047-EJD-1
28   ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW
     TRIAL